·(109 So. 151)

### COUNTY COAL CO. OF ALABAMA v. BUSH. (6 Div. 676.)

(Supreme Court of Alabama. June 17, 1926.)

1. **Master and servant** ⟐386(4)—Agreement between employer and dependents held to justify award of lump sum settlement, notwithstanding objection of insurer, not party to compensation proceeding (Code 1923, §§ 7573, 7584); "agreement of parties."

Agreement between employer and dependents of deceased employé, who were only parties to compensation proceeding, that compensation should be paid in lump sum, *held* to justify such award, notwithstanding objection of insurer, in view of Code 1923, § 7584, since "agreement of the parties" in section 7573, relative to lump sum settlements, embraces only parties to proceeding.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Agreement.]

2. **Master and servant** ⟐386(1).

"Weekly earnings" of deceased employed in mine four months, but not every day because of slack season, *held* to be total earnings divided by number of days actually worked, multiplied by six, in view of Code 1923, § 7551.

Proceeding under the Workmen's Compensation Act by Otis Bush for the death of Fred Bush, opposed by the County Coal Company of Alabama, employer. Judgment of the Circuit court awarded compensation in a lump sum, and employer petitions for certiorari. Writ denied, and judgment affirmed.

Percy, Benners & Burr and Salem Ford, all of Birmingham, for appellant.

Lump sum settlements can only be awarded by agreement of the parties, approved by the court. Code 1923, § 7573; Pierce v. Boyer-Van Kuran Co., 99 Neb. 321, 156 N. W. 509,

L. R. A. 1916D, 970; State v. Dist. Court, 134 Minn. 16, 158 N. W. 713, L. R. A. 1916F, 957; Woodward Ir. Co. v. Bradford, 206 Ala. 447, 90 So. 803; Ex parte Avondale Mills, 208 Ala. 208, 93 So. 900. Average earnings of the deceased employé should be based upon actual earnings, not upon what he might have earned. Ex parte Hodges, 213 Ala. 388, 104 So. 929.

H. C. Wilkinson and J. R. McElroy, both of Birmingham, for appellee.

The method employed by the court in ascertaining the average weekly wage of deceased was the proper method. Honnold on W. C. §§ 150, 151; Code 1923, § 7551 (q); Garrison v. Woodward Ir. Co., 210 Ala. 45, 97 So. 64; Rakie v. Jefferson, etc., Co., 262 Pa. 444, 105 A. 638; Jensen v. Atlantic Ref. Co., 262 Pa. 374, 105 A. 545; Smolenski v. Eastern Coal Dock Co., 87 N. J. Law, 26, 93 A. 85. Counsel discuss other questions, but without citing additional authorities.

GARDNER, J. The County Coal Company of Alabama operated a mine in which was employed one Fred Bush, who entered such employment on March 19, 1925, and who, on July 23, 1925, was killed while working in said mine and under such circumstances as entitled his dependents to compensation under the workmen's compensation statute (Code 1923, §§ 7534–7613). The question of liability is not controverted. He left a widow and five minor children.

Under these proceedings by his dependents to recover compensation as provided by said statute, the trial court awarded compensation to the dependents in a lump sum, and this action of the court presents the first question here for consideration.

There is no bill of exceptions, but the evidence and findings of fact and conclusions of law are clearly and succinctly set forth in the judgment of the trial court.

[1] The only parties to this proceeding were the employer on the one side and the dependents of the employé on the other. These parties agreed that compensation should be made in a lump sum. The trial judge heard and considered the evidence offered as to the advisability of such character of payment, and gave sound reasons as adduced therefrom for his conclusion that a lump sum compensation would be to the best interest of the employé's dependents. The employer was fully insured, and it developed that the judgment rendered would be paid by the insurance company and not the employer, and the insurer objected to the lump sum compensation. It is insisted, therefore, that as the insurer is an interested party, and has not consented to such settlement, the action of the trial court in so awarding over its objection was erroneous.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

But the insurer was not a party to this proceeding, and we are of the opinion the expression "agreement of the parties" found in section 7573 of the Code of 1923, treating of lump sum settlements, was not intended to embrace any party, although in a sense interested in the result (as the insurer here), who was not a party to the proceedings. We are cited by counsel for petitioner to the case of Johansen v. Union Stockyards Co., 99 Neb. 328, 156 N. W. 511, which is approved by the Minnesota court, in State ex rel. v. District Court, 134 Minn. 16, 158 N. W. 713, L. R. A. 1916F, 957. But these decisions are only to the effect that lump sum compensation is not to be awarded unless the parties agree, and the question here for determination was not there presented. We find, however, that the Minnesota court, in the case of State ex rel. v. District Court, supra, expressly approves the conclusion of the Nebraska court as to the construction of this feature of the compensation statute, as found in the case of Bailey v. United States F. & G. Co., 99 Neb. 109, 155 N. W. 237, the court saying:

"Our interpretation of the meaning of section 25 [Laws 1913, c. 467, as amended by Laws 1915, c. 209, § 13] is the same as that given to a like section in the Nebraska act in Bailey v. United States Fidelity & Guaranty Co. [99 Neb. 109] 155 N. W. 237."

Speaking to the question here in point and discussing the Nebraska statute, the court in the Bailey Case, supra, said:

"This seems to give the insurance company no greater rights than the employer. A reasonable agreement made in good faith between the parties for the payment of a lump sum, not inconsistent with the amount of the periodical payments previously determined, binds the insurance company equally with the employer, and it cannot block a settlement by objecting to payment in a lump sum merely because it was not consulted."

We approve the foregoing observations, and find them consistent with the provisions of our own statute. Section 7584, Code of 1923.

The insurer is in all things bound by the judgment rendered against the employer upon the risks so insured. Its rights are not greater than those of the employer. We therefore conclude that, as the employer and representatives of the employé agreed upon a lump sum compensation, the trial court was justified in so awarding in the instant case, notwithstanding the objections of the insurer.

[2] The only remaining question relates to the amount of compensation awarded, which petitioner insists rests upon a false basis of calculation as to weekly earnings of the deceased employé.

The finding of facts contains a schedule showing the number of days actually worked by the deceased employé from the time he entered the employment of defendant to the date of his death, as well as the days he was idle, and the amount earned each day. It appears without dispute that the deceased was ready, willing, and able to work each and every day during the entire period of his employment, "but that, owing to slack conditions in the coal market, the mines did not operate on days deceased was idle or did not work; that his failure to work on those days was through no fault of his own, but was solely attributed to the fact that the mines did not operate on those days." The learned trial judge has in his opinion concisely stated the contention of the respective parties in this particular and his conclusions thereon, which meet our approval, as follows:

"The plaintiff in this action insists that the court should take the amount earned during the days actually worked by the deceased and divide that amount by the number of days actually worked and multiply the result by six in order to ascertain the average weekly earnings of the deceased. The defendant contends that the court should take the amount actually earned from the 19th day of March to the 23d day of July, 1925, and divide it by the number of weeks in that period of time in order to arrive at the average weekly earnings of the deceased and deduct the seven consecutive day period idle in the first part of May. In short, the question presented is whether or not the average weekly earnings of the deceased must be decreased by charging up to him the days lost when the mines were idle through no fault of his own. Under the defendant's contention, the deceased earned $250 in 17½ weeks, or an average of $14.73 per week. Under the plaintiff's contention, the average weekly earnings would amount to $19.86.

"Section 7551 of the Code lays down a rule for computing average weekly earnings where the employé has been in the service of the employer for more than 52 weeks immediately preceding the date of injury. This section, however, provides:

"'Where the employment prior to the injury extended over a period of less than 52 weeks the method of dividing the earnings during that period by the number of weeks and parts thereof which the employé earned wages shall be followed, provided results just and fair to both parties will thereby be obtained.'

"It is a matter of common knowledge in this district that the mining industry is not as active during the spring and summer months as during the fall and winter, when there is a greater market for coal, and the court is of the opinion and so finds that it would not be just and fair to both parties in this case to hold that the average weekly earnings of the deceased should be computed by taking the amount actually earned from the 19th day of March to the 23d day of July and divide it by the number of weeks in that period of time. The court further finds and holds that it would be just and fair to both parties to take the total amount earned during the period of time the deceased was employed by the defendant and divide the amount earned by the number of days actually worked. The result would be the average daily wage, and this multiplied

by six would represent the average weekly earnings of the deceased during the time he was employed by the defendant. The amount thereof the court finds to be $19.86 per week."

Counsel for petitioner rely upon Ex parte Hodges, 213 Ala. 388, 104 So. 828, but that case dealt with an employment of more than 52 weeks and within the mandatory provisions of subdivision (g) of section 7551, Code of 1923, and in which cases the method of computation therein stipulated is held to be exclusive. Garrison v. Woodward Iron Co., 210 Ala. 45, 97 So. 64.

Here, the deceased was employed for a period of less than five months, and therefore not within such mandatory provisions, but the case is brought within the influence of that portion of the statute above set out as quoted from the opinion of the trial court. As to such cases this court in Garrison v. Woodward Iron Co., supra, used the following language here pertinent:

"It must be observed that the method provided in this subdivision is not mandatory, as it contains a proviso giving the trial court the right to determine if said method will produce just and fair results to both parties. The trial court, in effect, found that, owing to the brevity of the employment, the spasmodic and interrupted nature of same, due to industrial conditions then existing, the method there set forth would not furnish a just and fair basis of the average weekly earnings of the intestate, and we cannot hold, as matter of law, that the trial court was wrong in this respect."

The case of Rakie v. Jefferson Coal & Iron Co., 262 Pa. 444, 105 A. 638, supports the conclusion that in cases of this character in calculation of weekly earnings, the days in which the mines were closed, and deceased's idleness during such period was through no fault of his own, were properly deducted. The conclusion is also supported in principle by the case of Smolenski v. Eastern Coal Dock Co., 87 N. J. Law, 26, 93 A. 85, wherein speaking to a question somewhat analogous, the court said that it was not the legislative intent that the employé should "lose by reason of enforced idleness."

Authorities from other jurisdictions aside, however, we are persuaded the above-quoted language from Garrison v. Woodward, supra, is conclusive in principle of the instant case, and here directly applicable.

In such a case as here presented, much must be left to the sound judgment and judicial discretion of the trial court, and we cannot here hold, as a matter of law, that the conclusion reached was wrong in this respect.

We are of the opinion the record is free from error, and the writ of certiorari will be denied, and the judgment affirmed.

Writ denied: affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.