30 So.2d 579

H. C. PRICE CO. v. LEE.

6 Div. 525.

Supreme Court of Alabama.

May 22, 1947.

London & Yancey and Chas. W. Greer, all of Birmingham, for appellant.

E. D. McDuffie and A. K. Callahan, both of Tuscaloosa, for appellee.

LIVINGSTON, Justice.

Petition for writ of certiorari to review the judgment of the Circuit Court of Tuscaloosa County, awarding compensation to Otis Lee for the loss of an eye. Lee, a negro man about forty-eight years of age, was employed by the H. C. Price Company,

a partnership composed of H. C. Price and M. L. Price, to assist in laying pipe, and which included the work of chipping a black substance from the pipe. This substance is a kind of paint with which the pipe is painted before it is put in the ground, and is referred to in the record as "dope."

Lee claimed that on April 2, 1945, while chipping "dope" from a pipe with a chop hammer particles of the "dope" got into his left eye, and as a consequence the eye had to be removed.

It is not contended that the parties are not governed by the Workmen's Compensation Laws of the State.

The trial court awarded compensation at the rate of eighteen dollars per week, the maximum amount provided for under the compensation laws, section 289, title 26, Code of 1940, for one hundred weeks, fixing a lump sum of five hundred and forty dollars for thirty weeks, the amount due to the date of trial, and eighteen dollars per week for seventy weeks. Sections 279 (C)-1, (H), 289, title 26, Code.

Two questions are presented for review: (1) Was the loss of appellee's eye the direct and proximate result of accidental injury arising out of and in the course of his employment with appellant? (2) Did the trial court commit reversible error in finding that appellee's average weekly earnings were forty dollars per week, and fixing his compensation at eighteen dollars per week for one hundred weeks?

In a compensation case when the review in this Court is by certiorari, as here, this Court will not look to the bill of exceptions to find the weight of the evidence as to any fact found by the trial court, but simply to see if there is any evidence or reasonable inference from evidence to support facts found by the court. If, on any reasonable view of the evidence, it will support the conclusions reached by the trial court, the finding and judgment will not be disturbed. Sloss-Sheffield Steel & Iron Co. v. Alexander, et al., 241 Ala. 476 (478), 3 So.2d 46; Ex parte Coleman, 211 Ala. 248, 100 So. 114, 115; Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219–221, 92 So. 458; Ex parte Louisville & Nashville R., 208 Ala. 216, 94 So. 289; Ex parte Nunnally Co., 209 Ala. 82, 95 So. 343; Ex parte Shaw, 210 Ala. 185, 97 So. 694; Ex parte Thomas, 209 Ala. 276, 96 So. 233; Ex parte Little Cahaba Coal Co., 213 Ala. 596, 105 So. 648; Benoit Coal Mining Co., et al. v. Moore, et al., 215 Ala. 220, 109 So. 878; Martin v. Sloss-Sheffield S. & I. Co., 216 Ala. 500, 113 So. 578; Bell v. Tennessee Coal & Iron Co., 240 Ala. 422, 199 So. 813.

It is not controverted that appellee in the performance of his duties to appellants on or about April 2, 1946, struck a pipe to remove "dope" therefrom, and that particles of the "dope" got into his eye. Appellee testified that he went or was carried to the office of the partnership's physician, Dr. Maxwell, the next day; that Dr. Maxwell examined his eye and put some medicine in it; that he went to see Dr. Maxwell four times, and that Dr. Maxwell then sent him to see Dr. Searcy, an eye specialist; that he went to see Dr. Searcy several times, and that Dr. Searcy treated his eye for some time, and then sent him to Birmingham. That when he went to Birmingham his eye was still sore and inflamed, and that he could not then see out of it; that he went to a clinic in Birmingham, and "they" tried to do something for his eye, but could not help it and sent him to the Jefferson Hospital; that "they" operated on his eye at the Jefferson Hospital, and got some pus out of it; that he stayed at the Jefferson Hospital six days; that he went back to Tuscaloosa from Birmingham, and was still having trouble with his eye; that he then went to see a doctor in Mississippi who removed the eye. The testimony is to the effect that appellee's eye was removed somewhere near the first of September, 1946, or about five months after the accident occurred. Harlan Mahon, a witness for appellee, testified that he was an inspector on the job where appellee worked, and that he saw appellee when he got some of the "dope" in his eye; that he (Mahon) got some of the "dope" out, and told Mr. Canfield, the foreman, that he ought to send him to a doctor.

Appellants earnestly insist that the loss of appellee's eye was caused by syphilis, and that there was no legal evidence sufficient to form a basis for the court's conclusion

that the loss of appellee's eye was in any way attributable to an accident he may have received while in appellants' employ.

█ We need not discuss appellants' evidence. It is clear enough that the evidence of appellee, the substance of which we have stated above, is amply sufficient to support the finding of the trial court that appellee lost his eye as the result of an accident arising out of and in the course of his employment to appellants.

The remaining question relates to the testimony touching the weekly earnings of appellee. It is not disputed that appellee had not worked for appellants for fifty-two weeks next preceding the injury to his eye. Appellee testified that he had worked for appellants for several months. Therefore, this case is not brought within the mandatory provisions of subdivision (G) of section 279, title 26, Code, and in which cases the method of computation therein stipulated is held to be exclusive. Garrison v. Woodward Iron Co., 210 Ala. 45, 97 So. 64; County Coal Co. v. Bush, 215 Ala. 25, 109 So. 151. Here, appellee was employed for a period of less than twelve months, and therefore not within such mandatory provisions; but the case is brought within the influence of that portion of the statute which reads: "Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained." As to such cases, this Court in Garrison v. Woodward Iron Co., supra [210 Ala. 45, 97 So. 65], said:

"It must be observed that the method provided in this subdivision is not mandatory, as it contains a proviso giving the trial court the right to determine if said method will produce just and fair results to both parties. The trial court in effect found that, owing to the brevity of the employment, the spasmodic and interrupted nature of same, due to industrial conditions then existing, the method there set forth would not furnish a just and fair basis of the average weekly earnings of the intestate, and we cannot hold, as matter of law, that the trial court was wrong in this respect."

█ We are persuaded that the above quoted language from the Garrison case, supra, is conclusive in principle of the instant case. And it was said in County Coal Co. v. Bush, supra [215 Ala. 25, 109 So. 153], a case similar to the present one: "In such a case as here presented, much must be left to the sound judgment and judicial discretion of the trial court."

█ Appellee testified that his wage was seventy cents per hour (in answer to another question, he said seventy-five cents per hour), that he worked seven days per week ordinarily, but that some weeks he worked less; that some weeks his wage was about sixty dollars, though at other times he received only twelve or fourteen dollars per week. He testified that his average weekly wages with appellants were over thirty dollars per week. We are unwilling to hold, as a matter of law, that the conclusion reached by the trial court was wrong in this respect.

█ Moreover, if the trial court's conclusion that appellee's average weekly earnings were forty dollars per week is wrong, we would be unwilling to reverse the cause. There is positive testimony that the average weekly earnings of appellee were over thirty dollars per week. If this is so, appellee having a dependent wife would be entitled to sixty per cent of his average weekly earnings. Calculating his earnings at thirty dollars per week, he would be entitled to eighteen dollars per week, the maximum allowed by law.

We are of the opinion that the record is free from error, and the judgment is affirmed.

Affirmed.

GARDNER, C. J., and BROWN, FOSTER, LAWSON, and STAKELY, JJ., concur.