74 So.2d 717

### DEATON TRUCK LINE, Inc.

v.

### Evelyn ACKER.

### 6 Div. 355.

Supreme Court of Alabama.

June 30, 1954.

Rehearing Denied Oct. 7, 1954.

London & Yancey, Geo. W. Yancey, and Jas. E. Clark, Birmingham, for appellant.

Dryer & Dryer, Birmingham, for appellee.

LAWSON, Justice.

Certiorari was granted on petition of Deaton Truck Line, Inc., a corporation, to review a judgment of the Circuit Court of Jefferson County, Bessemer Division, awarding compensation to the widow and minor children of Emery O. Acker, deceased.

The proceedings were instituted in the trial court under the Alabama Workmen's Compensation Law, Chapter 5, Title 26, Code 1940, by Mrs. Evelyn Acker, the widow, who sued on her own behalf and that of her minor children.

On June 24, 1949, Emery O. Acker entered into a written agreement with the Deaton Truck Line, Inc., a corporation, hereinafter referred to as Deaton, wherein Acker, as owner, rented or leased to Deaton a truck-tractor and a trailer which, when operated together, were capable of hauling freight. Deaton was engaged in the business of hauling freight as a common carrier, both intrastate and interstate. The said written agreement is set out in the report of the case.

The written agreement here involved is more or less similar to the one considered by this court in Stevens v. Deaton Truck Line, Inc., 256 Ala. 229, 54 So.2d 464, 468. In that case we held, in effect, that under the terms and provisions of the agreement there considered, the relationship of Deaton Truck Line, Inc., and Roberts was that of master and servant, and that Deaton would be chargeable with the negligence of Roberts (owner of the vehicle) where Roberts at the time of the negligent act was acting within the line and scope of his employment. We further said in that case:

"We are inclined to agree with the trial court that under the evidence in this case Roberts, when carrying out his duties under the terms of the contract, was a servant or employee of Deaton rather than an independent contractor.

"But such status or relationship in and of itself was not sufficient to make Deaton liable for the negligence of Roberts under all circumstances. To

recover against Deaton upon the theory of *respondeat superior* it was incumbent upon plaintiff to show that the act done was within the scope of Roberts' employment and was committed in the accomplishment of objects within the line of his duties, or in or about the business or duties assigned to him by his employer. Smith v. Brown-Service Ins. Co., 250 Ala. 613, 35 So. 2d 490."

In the case just referred to above, we were considering the question of whether Deaton was liable for the death of a third person caused by the alleged negligent operation of the motor vehicle by Roberts, and the language quoted above must be construed in connection with the question there before us.

The written agreement involved in the instant case, like that in the Deaton case, supra, provided that the lessor, the owner of the motor vehicle, was to keep it in good mechanical condition and repair at his own expense for the duration of the lease, pay all costs of its operation, including gasoline, oil, tires, parts, repairs, driver's salary, etc.

Acker drove the truck when it was being used in hauling freight for Deaton Truck Line, Inc. His last trip ended on the afternoon of Thursday, May 4, 1950, at which time he arrived at the lessee's terminal in Birmingham from New Orleans, Louisiana. He met his death three days later, on Sunday, May 7, 1950. Just prior to his death, Acker and a friend removed the gasoline tank from the truck and carried it into the kitchen of Acker's home located in or near Bessemer, some ten or twelve miles distant from Deaton's terminal in Birmingham. Without the knowledge of, and not under the supervision, direction or control of Deaton, Acker undertook to repair a leak in the gas tank which had been removed from the truck. While so engaged, an explosion occurred which resulted in Acker's death.

It may be conceded that under our holding in Stevens v. Deaton Truck Line, Inc., supra, Acker was an employee of Deaton rather than an independent contractor. But that relationship does not determine the question of liability here involved.

■ In order for an accident to be compensable under the Workmen's Compensation Law of this state, it must arise out of and in the course of employment. See Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666, for a discussion of those terms.

Our holding in the recent case of C. E. Adams & Co. v. Harrell, 257 Ala. 25, 57 So.2d 83, is not in point. In that case the question was whether Harrell was an employee or an independent contractor. If he was an employee, it was conceded that compensation was due, as there was no question but that his death resulted from an accident which arose out of and in the course of such employment.

Our interpretation of the written agreement here involved is that while the motor vehicle was out of service and being repaired, it was under the sole jurisdiction and control of Acker, whose duty it was to have it repaired at his own expense. He was privileged to select the place where, and the person by whom the repairs should be made.

At the time Acker was killed, the motor vehicle was out of service and out of commission so far as the work of transportation was concerned and incapable of earning compensation for him under his contract of employment. Acker selected the place where the repairs were to be made, at his home, a place where Deaton had no connection and where the business of Deaton did not require the presence of Acker. He elected to make the repairs himself.

■ We are constrained to the conclusion, therefore, that Acker's death did not occur in the course of his employment by Deaton. Prayther v. Deepwater Coal & Iron Co., 216 Ala. 579, 114 So. 194; McDonald v. Denison, 51 N.M. 386, 185 P.2d 508; Stuhr v. State Industrial Accident Commission, 186 Or. 629, 208 P.2d 450; Jarman v. Trucking, Inc., 286 Mich. 492, 282 N.W. 218; Pappas v. Yant Const. Co., 121 Neb. 766, 238 N.W. 531; Pettet v. Mon-

roe County Emergency Work Bureau, 248 App.Div. 797, 289 N.Y.S. 29, McKay v. Crowell & Spencer Lumber Co., La.App., 189 So. 508; Rector v. Ragner-Benson, Inc., 313 Mich. 277, 21 N.W.2d 129.

The conclusion which we reached above makes it unnecessary to treat the other questions argued by counsel for appellant.

The judgment is reversed and the cause remanded.

Reversed and remanded.

All the Justices concur except LIVINGSTON, C. J., who dissents.

LIVINGSTON, Chief Justice (dissenting).

This cause was assigned to me on original submission and I prepared the following opinion:

On the petition for certiorari of Deaton Truck Line, Inc., a corporation, we granted the writ to review a judgment of the Circuit Court of Jefferson County, Alabama, Bessemer Division, awarding compensation to the widow and minor children of Emery O. Acker, deceased.

The proceedings were instituted in the court below under the Alabama Workmen's Compensation Law, Chapter 5, Tit. 26, Code of 1940, by Mrs. Evelyn Acker, the widow, who sues on her own behalf and that of her minor children.

Three principal questions are argued in brief on appeal. They are:

(1) Was plaintiff's intestate an employee of the defendant company at the time of his death?

(2) Was plaintiff's intestate engaged in interstate commerce at the time of his death so as to render inapplicable the Alabama Workmen's Compensation Law?

(3) Did the trial court correctly determine the deceased's average weekly earning under Alabama Workmen's Compensation Law?

We are governed, of course, by the rule that the finding of the court below will not be disturbed where there is legal evidence which will support the trial court's finding. C. E. Adams & Co. v. Harrell, 257 Ala. 25, 57 So.2d 83, and cases therein cited.

The following facts are undisputed: Emery O. Acker was killed on May 7, 1950, by the explosion of a gasoline tank. The explosion occurred in the kitchen of Acker's home in Bessemer, Alabama. The gasoline tank had been taken by Ackers from his own 1945 model White tractor-truck for the purpose of repairing a leak in the tank. Acker left a widow, Mrs. Evelyn Acker, and four minor children.

On June 24, 1949, Emery O. Acker entered into a lease agreement with the Deaton Truck Line, Inc., a corporation, wherein Acker, as owner, rented or leased to the Deaton Truck Line, Inc., the White tractor-truck before-mentioned. The agreement between the parties, among other things, provided that Acker was to keep the vehicle in good mechanical condition and repair at his own expense for the duration of the lease, pay all costs of operating the same, including gasoline, oil, tires, parts, repairs, driver's salary, etc. Acker operated the equipment himself on franchise runs for the Deaton Truck Line, Inc., from the date of the lease until the date of his death. The last trip prior to his death ended on May 4, 1950, at which time he arrived at the company's terminal in Birmingham, Alabama, on a return trip from New Orleans, Louisiana. Three days later, on Sunday afternoon, while in the kitchen of his home in Bessemer, Alabama, some ten or twelve miles distant from the defendant's premises in Birmingham, Acker personally attempted to repair a leak in the gas tank of the leased truck, and while so doing, he became the victim of a fatal explosion of said gasoline tank. Acker had dismantled the gasoline tank from the truck which was parked at his home and had taken same into the kitchen of his home, where he was attempting the repairs without the knowledge of, and not under the supervision or direction of, Deaton Truck Line, Inc. In normal course of events, but for the unfortunate tragedy, Acker would probably have been dispatched from the

terminal of Deaton Truck Line, Inc., in Birmingham, Alabama, on the following Monday, subject, of course, to his taking his turn behind other drivers entitled to a run before him, and to his equipment passing the safety inspection.

The contract between Acker and the Deaton Truck Line, Inc., will be set out in the report of the case.

A comparison will show that the contract, or lease agreement, between Acker and the Deaton Truck Line, Inc., is very similar to that set out in the case of Stevens v. Deaton Truck Line, 256 Ala. 229, 54 So. 2d 464, 468.

In the Stevens case, supra, it was said:

"Agreements more or less similar to the one entered into between Deaton and Roberts have been before the courts of other jurisdictions. In some of the cases the relationship between the parties was held to be that of master and servant and the lessee has been charged with the negligence of the lessor (owner of the vehicle) where the latter at the time of the negligent act was acting within the line and scope of his employment. Gas City Transfer Co., Inc., v. Miller, 107 Ind.App. 210, 21 N.E.2d 428; Universal Carloading & Distributing Co., Inc., v. McCall, 107 Ind.App. 479, 25 N.E.2d 253; Sanford v. Goodridge, 234 Iowa 1036, 13 N.W.2d 40; Rogers v. Silver Fleet System of Memphis, La.App., 180 So. 445; Gulf Coast Motor Express Co., Inc., v. Diggs, 174 Miss. 650, 165 So. 292; Bates Motor Transport Lines v. Mayer, 213 Ind. 664, 14 N.E. 2d 91. In other cases it has been held that even though the lessor be said to be an independent contractor, nevertheless the lessee is chargeable with the negligence of the lessor in the carrying out of the undertaking for which he contracted. Kemp v. Creston Transfer Co., D.C., 70 F.Supp. 521; Venuto v. Robinson, 3 Cir., 118 F.2d 679; Hodges v. Johnson, D.C., 52 F.Supp. 488. As we understand the Federal decisions cited above, liability was fixed on the lessee under the rule that 'an individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.' Restatement of the Law of Torts, § 428, p. 1149.

"We are inclined to agree with the trial court that under the evidence in this case Roberts, when carrying out his duties under the terms of the contract, was a servant or employee of Deaton rather than an independent contractor."

And in our more recent case of C. E. Adams & Co. v. Harrell, 257 Ala. 25, 57 So.2d 83, 86, it was said:

"Petitioner does not challenge the correctness of the facts as found by the trial judge on the question of whether deceased was an employee or an independent contractor. Petitioner argues, however, that the facts so found do not warrant the conclusion reached by the trial court that deceased was an employee.

"Much stress is laid in argument on the fact that deceased, in rendering service to petitioner, used his own truck and paid the cost of its operation. This fact did not change the relationship. North Alabama Motor Express, Inc., v. Whiteside, 27 Ala.App. 223, 169 So. 335.

"This court is fully committed to the proposition that it is the reserved right of control rather than its actual exercise which furnishes the true test of whether the relationship between the parties is that of an independent contractor or of employer and employee— master and servant. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608, and cases cited.

"This case is not distinguishable in principle from Sloss-Sheffield Steel &

Iron Co. v. Crim, 219 Ala. 148, 121 So. 408; Stith Coal Co. v. Alvis, 224 Ala. 603, 141 So. 663; Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276; Tuscaloosa Veneer Co. v. Martin, supra. See McKay v. Crowell & Spencer Lumber Co., La.App., 189 So. 508."

But appellant argues:

"In paragraph No. 1 of the lease which existed between W. E. Roberts and Deaton Truck Line, Inc., as set forth in the Stevens v. Deaton Truck Line case, cited supra, the following terms were used:

" '1. Owner hereby rents, leases and delivers to the Company *the exclusive control* of the following described motor vehicle, * * * upon the terms and conditions set out below.'

"In paragraph No. 2 the following verbiage is used:

" '2. The Company shall have the *exclusive use and control of said vehicle* for the entire term of this lease, and the said vehicle shall be used for the transportation of freight both intrastate and interstate under the authority of the Company and for no other person, firm or corporation.'

"This is a distinct contrast to the terms of the lease which existed between Emery O. Acker and Deaton Truck Line, Inc., as set forth in paragraph numbered 1, which states:

" '1. Owner hereby rents, leases and delivers to the Company the following described motor vehicle * * * upon the terms and conditions set out below.'

"Note that the words 'the exclusive control' are eliminated in the Acker lease, in paragraph number 1, and that under paragraph number 2 it is not provided that the Company shall have the exclusive use and control of said vehicle for the entire term of the lease, but it is stated as follows:

" '2. During the term of this lease the vehicle shall be used for the trans-portation of freight both intrastate and interstate under the authority of the company and for no other person, firm or corporation. During the time the said vehicle is so being used in the service of the Company for the transportation of freight the Company shall have the exclusive use and control thereof.'

"It therefore becomes apparent that under the Acker lease the Company retained exclusive use and control of the equipment only while being used in the service of same for the transportation of freight, which eliminates any possible argument that their dominion over the leased vehicle continued while Acker was having it repaired."

The trial court upon a consideration of all the facts in the instant case found that the relationship of employer and employee, and not of an independent contractor, existed between the deceased, Acker, and the Deaton Truck Line, Inc., at the time deceased met his death, and that the accident causing his death arose out of and in the course of his employment.

Under the contract between Acker and Deaton Truck Line, Inc., Acker was obligated to keep the truck in proper mechanical condition and repair, and it is undisputed in the evidence that Deaton Truck Line had the right to, and did, inspect the truck before each trip. This clearly indicated that if the truck was not in satisfactory condition Deaton could refuse to allow it to make a trip. We think clearly, that when Acker was killed in repairing the gasoline tank on his truck, his death arose out of and in the course of his employment. On a review of the evidence as set out in the record, and under the rule that obtains in such cases, we are clearly of the opinion that there were some inferences to be drawn from the evidence tending to support the finding of the trial court.

It is insisted also that plaintiff's intestate was engaged in interstate commerce at the time of his death so as to render inapplicable the Alabama Workmen's Compensation Law. The test declared in our cases is that the employee at the time of

476

the injury must be engaged in interstate transportation, or in work so closely related to it as to be practically a part of it in order to displace state jurisdiction and to make applicable the Federal act. They also recognize that there is a difference in the instrumentalities. In some cases, the instrumentalities in actual use may be said to have definite character and to give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character, according to the circumstances; and among the circumstances is the time taken for repairs during the withdrawal from use. The true test under our cases is: Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it? Kasulka v. Louisville & N. R. Co., 213 Ala. 463, 105 So. 187, 188. In that case, it was held that an employee repairing an engine in the shop of the defendant at Albany, Alabama, was not engaged in interstate commerce, and that the burden was upon the plaintiff to aver facts showing that the engine was temporarily " 'interrupted in an interstate haul to be repaired and go on,' " or facts of similar import, in order to make a case under the Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq. This case held that an employee of the common carrier is within the purview of the state's Workmen's Compensation Act if at the time of the injury he is not engaged in interstate commerce within the meaning of the Employer's Liability Act. See also Southern Ry. Co. v. Varnell, 222 Ala. 237, 131 So. 803.

The appellant seems to rely on the 1939 Amendment to U.S.C.A., Title 45, § 51, as quoted in the American Mutual Liability Ins. Co. v. Louisville & N. R. Co., 250 Ala. 354, 34 So.2d 474. But we are fully persuaded that nothing in this section applies except where a "common carrier by railroad" is affected, and it has been definitely held that the Federal Employer's Liability Act does not apply to motor carriers in Brannon v. Rickenbacher Transportation, Inc., D.C., 43 F.Supp. 893. Section 263 of Tit. 26, Code of Alabama 1940, contains the following language:

"Articles 1 and 2 of this chapter shall not be construed or held to apply to any common carrier doing an interstate business, *while engaged in interstate commerce,* * * *."* (Emphasis supplied.)

Our cases, we think are to the effect, when read in connection with the above notation from our Workmen's Compensation Act, that the employee of a common carrier doing an interstate business must be engaged in interstate commerce at the time of his injury in order to eliminate the provisions of the Workmen's Compensation Act. We are of the opinion that deceased, Acker, was not engaged in interstate commerce at the time of his death.

The remaining question relates to the testimony touching the weekly earnings of Acker, the deceased. Plaintiff's intestate was not employed by defendant for a period of 52 weeks. Therefore, this case is not brought within the mandatory provisions of Subdivision (G) of Section 279, Tit. 26, Code 1940. It was said in H. C. Price Co. v. Lee, 249 Ala. 230, 30 So.2d 579, 581:

' Here, appellee was employed for a period of less than twelve months, and therefore not within such mandatory provisions; but the case is brought within the influence of that portion of the statute which reads: 'Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained.' As to such cases, this Court in Garrison v. Woodward Iron Co., supra (210 Ala. 45, 97 So. [64] 65), said:

" 'It must be observed that the method provided in this subdivision is not mandatory, as it contains a proviso giving the trial court the right to determine if said method will produce

just and fair results to both parties. The trial court in effect found that, owing to the brevity of the employment, the spasmodic and interrupted nature of same, due to industrial conditions then existing, the method there set forth would not furnish a just and fair basis of the average weekly earnings of the intestate, and we cannot hold, as matter of law, that the trial court was wrong in this respect.'

"We are persuaded that the above quoted language from the Garrison case, supra, is conclusive in principle of the instant case. And it was said in County Coal Co. v. Bush, supra (215 Ala. 25, 109 So. [151] 153), a case similar to the present one: 'In such a case as here presented, much must be left to the sound judgment and judicial discretion of the trial court.' "

We think there is testimony that the average weekly earnings of appellee's intestate were over $60 per week. Petitioner is entitled to 65 per cent of the average weekly earnings, subject to a maximum of $21 per week for 300 weeks.

My brothers could not agree with the foregoing opinion prepared by me, which would have affirmed the case, but instead have adopted the opinion of Lawson, J. I must, therefore, respectfully dissent. In short, my reasons may be stated as follows:

Acker rented or leased the truck to Deaton. He could have done so without more, that is, without agreeing to drive it or furnish a driver, and without agreeing to keep it in repair, in which event, Deaton would have been compelled to repair it, if and when necessary, in order to use it. Instead, Acker agreed with Deaton to furnish a driver and to keep the truck in repair. The consideration paid Acker by Deaton was, in part, for repairs when necessary. Deaton had the right to inspect the truck, and presumably the right to prevent it being used when it failed to pass inspection. Under the evidence in the case, it is my opinion that at the time he was killed Acker was an employee of the Deaton Truck Line, and his death was caused by an accident which arose out of and in the course of his employment. Under the evidence in this particular case, I think that it is inconsistent to say that Acker was a servant or employee of Deaton, but that the accident resulting in his death did not occur in the course of his employment. Repairing the truck was a part of the job he contracted to do. If he had been killed while driving the truck, our authorities are clear to the effect that his death would have been compensable under our Workmen's Compensation Law. He was killed repairing the truck which he had contracted to keep in repair, and in my humble judgment, his death arose out of and in the course of his employment. See the following authorities, which to my mind support this dissent. Welch v. North Dakota Workmen's Compensation Bureau, 75 N.D. 608, 31 N.W.2d 498; Tallent v. M. C. Lyle & Son, 187 Tenn. 482, 216 S.W.2d 7; Hilyard v. Lohmann-Johnson Drilling Co., 168 Kan. 177, 211 P.2d 89; Mosley v. Royal Indemnity Co., 5 Cir., 68 F.2d 220.

I, therefore, respectfully dissent.