FAULKNER, Justice.
The petition for writ’ of certiorari to the Court of Civil Appeals was granted for the purpose of determining whether or not this Court’s judgment in Deaton Truck Line v. Acker, 261 Ala. 468, 74 So.2d 717 (1954), should be overruled. A majority of this Court is of the opinion that Deaton should be overruled. Therefore, the judgment of the Court of Civil Appeals, based on the authority of Deaton, is reversed.
G & B Log Company, is in the business of cutting and selling logs. In March, 1976, Pritchett was employed by G & B as a truck driver. The truck and trailer used by him to haul G & B’s logs were purchased by Pritchett when he began working for G & B. The owner of G & B, Roy Black, helped Pritchett secure financing for the truck and trailer with the Bank of Dadeville.
Pritchett entered into an oral agreement with G & B to the effect that his truck and trailer would be used to haul logs exclusively for G & B. He was paid every two weeks according to the mileage driven or by the weight of the loads hauled, depending on the type of logs. Part of the agreement between Pritchett and G & B was that Pritchett would make all repairs to his truck and equipment and keep them in good repair and safe operating condition. He was responsible for all gas, oil, and maintenance on his equipment. The amount of compensation paid to Pritchett by G & B was based in part upon the fact that Pritch-ett furnished the gas, oil, maintenance, and insurance on the truck and trailer. He was instructed by G & B that his equipment must be kept in a safe operating condition. Pritchett was notified that the workmen’s compensation insurance carrier, Corporate Group Services, would inspect his truck from time to time to ascertain whether or not it was in good and safe operating condition.
*624 In July, 1978, Pritchett’s truck and trailer were wrecked while hauling logs for G & B. According to the evidence, the logs are held on the trailers by five inch or six inch pipes which are called “standards” or “bolsters,” and one of these “bolsters” broke on Pritch-ett’s trailer, causing the logs to spill out and causing the trailer and truck to turn over on their sides.
The damaged truck and trailer were taken to A & J Body Shop in Phenix City, Alabama, for repairs. Pritchett was checking the trailer out on July 24, 1978, “to see what had to be fixed on it, what had to be replaced according to the cables and bolsters and things like that ... what had to be done to get it back in operating condition”. Attempting to remove a damaged and loose bolster, Pritchett slipped and fell from the trailer to the ground. As a result of this fall, he suffered an acute hernia of the left groin and a herniated disc in his back which have rendered him permanently and totally disabled.
G & B instructed Pritchett that when he had repaired his truck to return to work, that his job would be held open for his return. G & B did not supervise or instruct Pritchett on how or where the repairs should be made. According to the original agreement between Pritchett and G & B, it was Pritchett’s duty to keep the truck repaired.
Pritchett received workmen’s compensation benefits from July 24, 1978, until May 15, 1980, at which time those benefits were stopped. A lawsuit was filed after the compensation payments were discontinued. The trial court found that Pritchett was an employee of G & B and that he was permanently and totally disabled because of the injuries received on July 24, 1978. However, in denying his claim for workmen’s compensation, the court concluded that Pritchett’s injuries did not arise out of and in the course of his employment. From that ruling an appeal was taken to the Court of Civil Appeals. The Court affirmed the trial court on the authority of Deaton.
In Deaton Truck Line v. Acker, 261 Ala. 468, 74 So.2d 717 (1954), this Court was presented with almost identical facts as presented by Pritchett. Acker leased his truck to Deaton Truck Lines. It was his duty to keep the truck in good and safe operating condition. Deaton had the right to, and did, inspect the truck before each trip, and if the truck was not in satisfactory condition, Deaton could refuse to allow it to make a trip.
Here are the facts leading to Acker’s death, as set out in the Deaton opinion:
“Acker drove the truck when it was being used in hauling freight for Deaton Truck Line, Inc. His last trip ended on the afternoon of Thursday, May 4, 1950, at which time he arrived at the lessee’s terminal in Birmingham from New Orleans, Louisiana. He met his death three days later, on Sunday, May 7, 1950. Just prior to his death, Acker and a friend removed the gasoline tank from the truck and carried it into the kitchen of Acker’s home located in or near Bessemer, some ten or twelve miles distant from Deaton’s terminal in Birmingham. Without the knowledge of, and not under the supervision, direction or control of Deaton, Acker undertook to repair a leak in the gas tank which had been removed from the truck. While so engaged, an explosion occurred which resulted in Acker’s death.”
Under these facts Justice Lawson, writing for the majority, and acknowledging that Acker was an employee of Deaton, held that Acker’s death did not occur in the course of his employment with Deaton. Result — no workmen’s compensation death benefits to Acker’s widow and minor children.
Chief Justice Livingston filed a lone dissent in Deaton.[1] This is what he wrote:
“My brothers could not agree with the foregoing opinion prepared by me, which would have affirmed the case, but instead have adopted the opinion of Lawson, J. I must, therefore, respectfully dissent. In *625 short, my reasons may be stated as follows:
“Acker rented or leased the truck to Deaton. He could have done so without more, that is, without agreeing to drive it or furnish a driver, and without agreeing to keep it in repair, in which event, Dea-ton would have been compelled to repair it, if and when necessary, in order to use it. Instead, Acker agreed with Deaton to furnish a driver and to keep the truck in repair. The consideration paid Acker by Deaton was, in part, for repairs when necessary. Deaton had the right to inspect the truck, and presumably the right to prevent it being used when it failed to pass inspection. Under the evidence in the case, it is my opinion that at the time he was killed Acker was an employee of the Deaton Truck Line, and his death was caused by an accident which arose out of and in the course of his employment. Under the evidence in this particular case, I think that it is inconsistent to say that Acker was a servant or employee of Deaton, but that the accident resulting in his death did not occur in the course of his employment. Repairing the truck was a part of the job he contracted to do. If he had been killed while driving the truck, our authorities are clear to the effect that his death would have been compensable under our Workmen’s Compensation Law. He was killed repairing the truck which he had contracted to keep in repair, and in my humble judgment, his death arose out of and in the course of his employment.”
We agree with the view of the Chief Justice in Deaton. We find it inconsistent to hold on the one hand that Pritchett was an employee of G & B Log Company, and on the other hand, to hold that he was not acting within the line and scope of his employment when he was injured. At the time of Pritchett’s injury, he was engaged in keeping the truck and trailer in good repair. That was as much a part of his employment with G & B Log Company as transporting the logs at the company’s direction. At that time he was engaged in the furtherance of his employer’s business.
Our position, by adopting the Chief Justice’s dissent in Deaton (a position which we consider to be reasonable, logical, and within the public policy of this jurisdiction), is supported by numerous other courts throughout the United States. Cf. Mosley v. Royal Indemnity Co., 68 F.2d 220 (5th Cir.1934); Employers Liability Assurance Corp. v. Henderson, 37 Ga.App. 238, 139 S.E. 688 (1927); Shell Oil Co. v. Industrial Accident Commission, 18 Cal.Rptr. 540, 199 Cal.App.2d 426 (1962); Harding v. Herr’s Motor Express, Inc., 315 N.Y.S.2d 693, 35 A.D.2d 883 (1970); Tallent v. M.C. Lyle & Son, 187 Tenn. 482, 216 S.W.2d 7 (1948). We will not prolong this by citing any more cases.
The judgment of the Court of Civil Appeals is reversed, and the case is remanded to it for entering an order reversing and rendering the judgment of the trial court.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and BEATTY, J., dissent.
MADDOX, J., not sitting.

. It is quite evident that the Chief Justice prepared the original opinion for conference and then failed to get the votes. Justice Lawson’s view prevailed.