BONER *v.* EASTERN MICHIGAN POWER CO.

MASTER AND SERVANT—LOOSE RUNG IN LADDER—NEGLIGENCE—PERSONAL INJURIES—LICENSEE.

> Where an iron ladder used by a construction company in its work contained a loose rung which turned when pressure was applied, and of which, although defendant had notice, it neglected to notify plaintiff, an employee, who was injured by reason thereof while climbing to the top of the boiler to eat his dinner during a 30-minute intermission, a judgment for plaintiff, in an action thereon, on the theory that he was a licensee and entitled to notice, is affirmed by a divided court.

Error to Jackson; Parkinson (James A.), J. Submitted January 9, 1920. (Docket No. 62.) Decided April 10, 1920. Rehearing denied June 17, 1920.

Case by Edwin Boner against the Eastern Michigan Power Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed, by a divided court.

*Bernard J. Onen (W. S. Cobb,* of counsel), for appellant.

*Price & Whiting,* for appellee.

Bird, J. Defendant, a construction company, employed plaintiff as a laborer while it was constructing a power house for the Au Sable Electric Company at Grand Rapids. The boilers, eight in number, were inclosed in masonry, and when finished the top thereof was about 20 feet from the floor. On the day in question several men, including plaintiff, were working on the header, the pipe which conveys the steam from the boiler to the engine. At the usual time, 11:30 a. m., the men laid aside their work 30 minutes for dinner. Plaintiff took his dinner pail and started up an iron ladder attached to the west wall of the building to reach the top of the boilers where it was the custom of the men to eat their dinner when the weather was cold. When near the top one of the rungs turned, thereby releasing his hold, and he fell to the cement floor, sustaining serious injuries.

On the first trial plaintiff's case was tried on the theory that the relation of master and servant existed at the time, and that the master had failed to furnish plaintiff with a reasonably safe place to work. A recovery was had and afterwards the case came to this court and was reversed (193 Mich. 629). This court held that under the case made the relation of master and servant did not exist at the moment plaintiff was injured. In the course of that opinion it was said:

"In our opinion, this case should have been submitted to the jury upon the theory that if there was any liability upon the part of either of these defendants to the plaintiff it was because of the duty owed to him as a licensee."

Upon a retrial of the cause the question as to whether defendant had control of the premises was

cleared up, some question having been raised upon the former trial in regard to it. And it was further shown that the only way the plaintiff could reach the place where he was working was to go up the ladder over the top of the boilers and through a hole in the outside wall on to a scaffold erected for the workmen. It appeared that he worked part of the time on the scaffold, part of the time on top of the boilers, and a part of his duties required him to go down the ladder with pipe to the work bench where the same was fitted and returned by the same route.

On the second trial plaintiff again tried his case on the theory that the relation of master and servant existed, and insisted that the additional testimony brought the case within that rule, but the trial court refused to submit the case upon that theory because of what this court said in reversing it. The trial court submitted it upon the theory that plaintiff was at the moment a licensee on the premises. Under that submission plaintiff recovered a judgment of $4,000.

Defendant has brought the case to this court and insists that no actionable negligence was shown on the part of defendant, and that the trial court was in error in submitting the case on the theory that plaintiff was a licensee. But that if it were proper to submit the case on that theory, then they further insist that the law on that theory was not properly stated to the jury. These are the important questions raised by appellant.

I agree with counsel that the case ought not to have been submitted on the theory that plaintiff was a licensee, not because no actionable negligence was shown, but because the record with the additional proofs on the second trial show a situation to which the rule of master and servant ought to have been applied. The proofs at the close of the second trial showed, in substance, that plaintiff was working for the defendant

by the hour; that on the day in question he was working on top of the boilers, and on the scaffold outside of the building which could be reached only by going up the ladder and over the boilers. That he was obliged to go up and down the ladder to fit pipe which was being put in place; that he had 30 minutes in which to eat his lunch; that he chose to remain on the premises while doing so, under, at least, an implied permission by defendant that he might do so; that he started to go up on top of the boilers where it was warm to eat his lunch, and that before reaching there he fell by reason of a defective ladder, of which defendant had notice, and was injured. It should also be considered in this connection that there is a strong inference that in going up the ladder he was going up to commence work again, as well as to eat his lunch. With only 30 minutes for lunch there would be very little time left after he finished his lunch before he would be obliged to resume his work. This showing, in my opinion, brought the case within the general rule that the relation of master and servant is not suspended where the servant remains upon the premises during the noon hour by the express or implied permission of the master. This rule has been approved by many courts including our own. A statement of the rule is that:

"A temporary stoppage of work by an employee for purposes which are the inevitable and necessary incidents of daily life, must, of necessity, be in the contemplation of the parties in every employment, and, hence, to create no suspension of the relation of employer and employee. Accordingly, the duties and liabilities incident to the relation are generally held to continue while employees are temporarily resting, procuring drinking water, or using the privy provided for their convenience. And the relation of employer and employee is not suspended, as a rule, during the noon hour, when the master expects, and expressly or

by fair implication invites, the servant to remain upon the premises in the immediate vicinity of the work." 18 R. C. L. p. 583.

"A servant is deemed in his master's service when present to perform his duties and subject to orders, though at the given moment he may not be actually engaged in the performance of any given work. Thus, the relation exists during a noon hour where the master especially and expressly, or by fair implication, invites his servant to remain on the premises and lunch in the immediate vicinity of his work." 8 Thompson on Negligence, § 3752.

"A workman is considered in the employment of his master during the intermission for the noon hour, if he remains upon the premises." Baldwin on Personal Injuries (2d Ed.), § 374.

This rule is not a universal one. Several State courts are not in accord with it, but our own court, at an early date, appears to have approved it. *Broderick* v. *Union Depot Co.*, 56 Mich. 261 (56 Am. Rep. 382). In this case a servant who remained upon the premises during the noon hour was requested by another employee to open a ventilator in a boiler room. In doing so some portion of it fell and injured him. In a suit to recover damages therefor it was insisted that the relation of master and servant existed. In holding the relation existed it was said in part:

"True, the plaintiff in this case during the intermission given was at liberty to go where he pleased, and was not obliged to stay upon the premises. If he did stay, however, he could in no just sense be considered a loiterer or a trespasser upon the premises of another. Having been accustomed to bring his dinner, he was not obliged to go upon the street to eat it; but under the circumstances, there was an implied permission to remain upon the premises while at his repast. I cannot accede to the proposition that he owed no duty to his master until the time stated had elapsed for him to resume his employment, and that whatever he did during this time was voluntary on his part."

This case upon the facts is much like the one under consideration, and the usual arguments urged in opposition to that view are answered by the opinion.

The case of *Haller* v. *City of Lansing,* 195 Mich. 753 (L. R. A. 1917E, 324), is a similar case on the facts involving the relation of master and servant during the noon hour. This is a workmen's compensation case, but is in line with the holding of the *Broderick Case.* See valuable notes, 12 L. R. A. [N. S.] 861; 23 L. R. A. [N. S.] 954.

But it is urged by defendant's counsel that even though the plaintiff did try his case on the theory of the relation of master and servant he can get no benefit therefrom because he has not assigned error. Plaintiff replies to this that even though he has not assigned error, if the case ought to have been submitted to the jury on the master and servant theory but instead was submitted on a theory less favorable to him, defendant cannot now complain because it is not shown that he was injured by the wrong submission.

We are inclined to the view that plaintiff is right in his contention if the trial court properly stated the law on the theory upon which it was submitted.

Defendant complains because the following request was refused by the court:

"The plaintiff cannot recover in this case, unless you find that he has proven by a preponderance of all the evidence that after he began using the ladder for his own convenience, the defendant, by its active conduct made such a change in the ladder as would amount to the creation of a new danger, and that defendant's conduct in making such change indicated a reckless and wanton disregard of the safety of the plaintiff."

On this subject the court charged:

"How then did any duty arise and become imposed on the defendant for nonperformance of which plain-

tiff can complain? It did not, unless you find from the evidence that the rung in the ladder was loose at the time it was erected and fastened to the wall, and was so found loose, and the assistant superintendent, Hottinger, was informed of it and knew it, and it was not thereafter, before the accident, fixed or fastened."

It is argued that the trial court was in error in refusing defendant's request, and also in instructing the jury as he did. Plaintiff was employed on the premises and in remaining thereon to eat his lunch he did so with the implied permission of the defendant. While it is true that under the degree of care prescribed as to licensees, defendant owed plaintiff no duty as to the condition of the premises, it had no right to knowingly permit him to run upon a hidden peril, or to wantonly or wilfully injure him. 29 Cyc. p. 499; *Beehler* v. *Daniels*, 18 R. I. 563 (29 Atl. 6, 27 L. R. A. 512).

The testimony of one witness was to the effect that the rung had been loose ever since it was erected, and that defendant had been advised of it. If defendant had knowledge of the defect it became its duty to warn plaintiff thereof, since he was on the premises by the implied invitation of the defendant. The court's charge was in accord with this view, and, therefore, without error. There was no occasion for any charge upon the question submitted by defendant's request because there was no proof in the case that there had been any change made in the ladder since it had been erected.

Defendant requested the court to charge the jury that plaintiff was guilty of contributory negligence as a matter of law. There were a good many surrounding circumstances before the jury bearing upon this question. It was purely a question of fact and the jury would have been subject to no criticism had they decided the question either way.

We have examined the remaining assignments but

do not find any reversible error in them. The judgment will, therefore, be affirmed.

MOORE, C. J., and STEERE and STONE, JJ., concurred with BIRD, J.

BROOKE, J. In our former opinion in this case, 193 Mich. 629, it is said:

"In our opinion this case should have been submitted to the jury upon the theory that if there was any liability on the part of either of these defendants to the plaintiff, it was because of the duty owed to him as a licensee."

I understood, and I think at least a majority of those concurring in that opinion understood, that the basic question of defendant's negligence was left undetermined. I am unable to agree with the conclusions reached by my Brother BIRD in his opinion. The mere fact that the rung of the ladder turns instead of being fixed so long as it remains in place in the ladder affords, in my opinion, no ground for submitting the question of defendant's negligence to the jury. Thousands of ladders are in daily use all over the State, and I venture the assertion that in a very large percentage of them rungs will be found here and there which, when pressure is applied, will turn. To predicate liability and permit a jury to find negligence under such facts, it seems to me, would be going farther than this court has ever gone and much farther than it should now go. Had Boner grasped the rung with his hand as climbers of ladders usually do, the fact that the rung would revolve under pressure would have added not one whit to the danger of his ascent.

I am of the opinion that the judgment should be reversed and no new trial granted.

FELLOWS, CLARK, and SHARPE, JJ., concurred with BROOKE, J.