RECTOR *v.* RAGNAR-BENSON, INC.

1. WORKMEN'S COMPENSATION—ACCIDENT MUST ARISE OUT OF AND
IN COURSE OF EMPLOYMENT TO BE COMPENSABLE.
> To justify an award of workmen's compensation for an acci-
> dental injury the accident must have arisen out of as well as
> in the course of the employment.

2. SAME—PARTICULAR FACTS DETERMINE HOW ACCIDENT AROSE.
> Whether an injury can be said to have arisen out of and in
> the course of the employment depends upon the particular
> facts and circumstances of each case.

3. SAME—PROXIMATE CAUSE.
> To arise out of the employment the injury sustained must have a
> causal connection with the work to be performed, must follow
> as a natural incident to the employment, be connected with
> it, and not be the result of a risk disassociated therefrom.

4. COURTS—OPINIONS—PRECEDENTS.
> Statements made in opinions of cases on appeal must be con-
> sidered in connection with the factual background of the case
> and may not be controlling in cases where the circumstances
> are quite different.

5. WORKMEN'S COMPENSATION—TRUCK DRIVER—REPAIR OF DISABLED
TRUCK OWNED BY THIRD PARTY.
> Truck driver who was paid by defendant $1 an hour as truck
> driver and $2 an hour for use of another's truck to haul sand
> for an excavation job, who had no regular hours of employ-
> ment, who left place of employment after truck had become
> disabled when universal joint was broken and had been moved
> to a place on the premises where it would not interfere with
> the work for three weeks and upon returning was killed when
> another truck driver was about to give him a tow toward re-
> pair shop did not suffer an injury arising out of and in the
> course of the employment as, at the time of the injury, de-
> ceased had not been directed to remove the truck by the em-

ployer and was not working for defendant, the removal and repair of the truck being no part of his usual employment.

6. Same—Benefit to Employer—Accident Arising Out of and In Course of Employment.

From the mere fact that an employee is engaged in work which may be beneficial to the employer when injured, it would not necessarily follow that such injury arose out of and in the course of the employment; the workmen's compensation act not being designed as a complete substitute for life, or sick and accident, insurance and sympathy not being allowed to broaden its express provisions (2 Comp. Laws 1929, § 8407 *et seq.*).

Appeal from Department of Labor and Industry. Submitted October 3, 1945. (Docket No. 7, Calendar No. 42,992.) Decided January 7, 1946.

Mary A. Rector, as guardian of the minor children of Louis Rector, deceased, filed her claim for compensation for his death against Ragnar-Benson, Inc., employer, and Massachusetts Bonding & Insurance Company, insurer. Award to plaintiff. Defendants appeal. Reversed and award vacated.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*Alexander, McCaslin, Cholette & Buchanan,* for defendants.

Boyles, J. Plaintiff, as guardian of the minor children of one Louis Rector, filed an application with the department of labor and industry for dependency workmen's compensation, claiming that Mr. Rector met his death while in the employ of the defendant Ragnar-Benson, Inc., and that the injury resulting in his death arose out of and in the course of his employment. A deputy commissioner of the department heard the matter and denied compensation. On review by the department, a majority of the compensation commission (three members) re-

versed the deputy's order and awarded dependency compensation. On leave granted, Ragnar-Benson, Inc., and its insurance carrier appeal to this court and the only question urged for reversal is that there is no competent evidence to support the finding that the injury resulting in the death arose out of and in the course of the employment.

Plaintiff's decedent was a truck driver hired by the defendant Ragnar-Benson, Inc., to haul sand for an excavation job being performed by said defendant for a forge plant for the Olds Motor Company in Lansing. The truck was not owned by Rector, who had hired it from the owner, one Arnold Maier. The contractor Ragnar-Benson, Inc., paid Rector on the basis of $1 per hour as driver and $2 per hour for use of the truck. He had no regular hours of employment. His payroll as a truck driver with the leased truck during the week previous to his death was for 2½ hours on Wednesday, 8¾ hours on Thursday, 10¼ hours on Friday, no work on Saturday or Sunday, and on Monday, the day of the accident, ¼ hour.

Some 23 trucks were used on the job, only two of them owned by the defendant contractor. Rector's truck was used on the backfill, the foreman directing the truck drivers where to get the backfill, and a checker for the contractor directing them where to unload it. On the morning of the accident Rector was on his first trip and after unloading his backfill on the job was pulling out when the universal joint on his truck broke. The truck was totally disabled at the place where the backfill was being unloaded, and at that place interfered with the work. The contractor's assistant superintendent had it moved by a bulldozer to another place on the premises 250 to 300 feet away, to a place on the premises where it would not be in the way of excavation work or other-

wise interfere with the work in any manner for at least three weeks. This occurred about 8:45 in the morning. Rector told the assistant superintendent he was going uptown to make arrangements and get the truck repaired. He was not instructed at any time by anyone connected with the employer to remove his truck from the second position where it was placed by the bulldozer. He returned to the premises about 12:15 p. m. of the same day, and asked another truck driver to give him a tow. Their purpose was to move the truck over to a hard surface from which place an automobile could tow it downtown. In attempting to do so, the other truck driver backed his truck up, bumped the rear end of Rector's truck where Rector was holding a chain to attach for the tow, Rector was crushed between the two trucks and killed. The question for decision is whether, under these facts and circumstances, it can be said as a matter of law that the accident resulting in Rector's death arose out of and in the course of his employment.

In *Hopkins* v. *Michigan Sugar Co.*, 184 Mich. 87, 90, 91 (L. R. A. 1916 A, 310) quoted with approval in *Appleford* v. *Kimmel*, 297 Mich. 8, 12, the court said:

"It is well settled that, to justify an award, the accident must have arisen 'out of' as well as 'in the course of' the employment, and the two are separate questions to be determined by different tests, for cases often arise where both requirements are not satisfied. An employee may suffer an accident while engaged at his work or in the course of his employment which in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it. An accident arising out of an employment almost necessarily occurs in the course of it, but the converse does not follow. 1 Bradbury on Workmen's Compensation,

p. 398. 'Out of' points to the cause or source of the accident, while 'in the course of' relates to time, place, and circumstances.''

We have repeatedly held that the question whether an injury can be said to have arisen out of and in the course of the employment depends upon the particular facts and circumstances of each case. No two cases are precisely alike in all respects. In the recent case of *Amicucci* v. *Ford Motor Co.,* 308 Mich. 151, the court again repeated what had been said in earlier cases (p. 155):

"The question of whether the accident arose 'out of and in the course of' the employment depends ultimately upon the facts and circumstances of each case.''

In that case the department of labor and industry found that the accident did not arise out of "horse-play'' and this court held that there was competent evidence to support the conclusion. In affirming the award of compensation in the above (*Amicucci*) case we repeated with approval what had been said in *Meehan* v. *Marion Manor Apts.,* 305 Mich. 262 (p. 156):

"To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom.''

Many statements can be selected from numerous decisions which, disconnected from the facts of the case, would support plaintiff's claim for compensation. However, such statements must be considered in connection with the facts in each case. We will briefly review the cases relied upon by plaintiff in which compensation was awarded, to ascertain

whether they have factual backgrounds sufficiently similar to that of the instant case to control the result here. We have in mind that isolated statements selected from those decisions do not necessarily control the question now before us, if the circumstances were quite different.

In *Haller* v. *City of Lansing,* 195 Mich. 753 (L. R. A. 1917 E, 324), an employee met accidental death during the noon hour intermission from his work, when he went into a toolhouse of the employer on the premises on a cold day to eat his lunch. The toolhouse was provided by the employer, used with the employer's consent, the workmen were engaged in outdoor work, and it was understood that workmen might bring their lunches and eat on the premises.

In *Malone* v. *Railway,* 202 Mich. 136, a common laborer employed by the defendant company as a member of a night gang laying track was injured while sitting on the curb during a temporary delay in the work.

In *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich. 462, the employee, a manager of defendant's store, had been instructed as a part of his duty to take home with him each night for safekeeping all money taken in at the store after banking hours. While doing so he met with an accident.

In *Derleth* v. *Roach & Seeber Co.,* 227 Mich. 258 (36 A. L. R. 472), plaintiff was employed part time in defendant's office and part time as a traveling salesman using his own automobile in the employer's business, at 10 cents per mile. On an exceptionally cold day at Marquette in December the employee left the office early and went home to prepare his automobile against freezing, for a trip for his employer the next day; and at a time within his usual hours of employment, while preparing his au-

tomobile for the trip, was killed by carbon monoxide gas.

In *Stockley* v. *School District No. 1, Portage Township,* 231 Mich. 523 (24 N. C. C. A. 170), a schoolteacher had been directed by the superintendent of schools to attend a teachers' institute in a neighboring city on a certain day, under a statute providing that teachers so attending should not lose their wages for the time spent. The court said that the teacher was performing a special duty within the scope of her contract at the time she met with an accident resulting in death, and allowed compensation.

In *Geibig* v. *Ann Arbor Asphalt Construction Co.,* 238 Mich. 560, a workman engaged in widening a street, 25 minutes before time to begin work, met accidental death after arriving at his place of employment, while crossing the street with an armful of wood to replenish a fire built by employees to warm themselves on the job. No shelter had been provided, it was cold November weather, the foreman allowed the fire to be built and used it to warm himself and took charge of it at one time. The workman had reached the place of his employment, found the fire started, left his dinner pail there, went across the street after more wood, and met with an accident resulting in his death.

In *Spero* v. *Heagany & Draper Co.,* 256 Mich. 403, the plaintiff's husband, employed as an automobile salesman, was allowed to keep the car at his home until sold, and was overcome by monoxide gas while he was getting the car ready to show a prospective customer.

In *Mann* v. *Board of Education of City of Detroit,* 266 Mich. 271, a high school principal met with accidental death while en route to Ann Arbor to confer with the registrar of the university and with fresh-

men at the university who had graduated from the school of which he was the principal. The purpose of his trip was within the scope of his work, he went on school time and the trip was approved by his school superintendent.

In all of the situations in the foregoing cases relied upon by plaintiff compensation was allowed, but in none of them does the factual background approximate the situation in the case before us. In this case the removal and repair of the disabled truck was on Louis Rector's own time, he had not been directed by his employer to remove it, and he was injured at a time when he was not working for the defendant company. So far as shown in the evidence, he could select his own time and convenience for such work. The removal and repair of the disabled truck was no part of his usual employment. His employer had nothing to do with the repair of the truck. His hourly rate of pay for himself and the use of the truck did not continue until he could have the truck removed, repaired, or started again in the work for which he was employed. Had it been otherwise, he might have taken as much time as he chose for the removal and repair and collected $3 per hour for such time. If he had been directed by his employer to remove the truck, have it repaired and returned to work, or if it had been necessary to remove the truck from the place where it had been left on that day in order that the work of the employer might carry on, there would be more force to plaintiff's claim that the removal, repair and return to hauling sand arose out of and in the course of his employment.

After the accident someone else was put to work by Arnold Maier, the owner of the truck, to remove it and repair it so as to get it back on the contractor's job, with another driver. Plaintiff argues that

inasmuch as Louis Rector was engaged in getting the truck off the premises when he was killed, to have it repaired so that he could again use it to haul sand for the contractor, he was engaged in work beneficial to the employer and that therefore his injury arose out of and in the course of his employment. Some isolated statements in our decisions lay a foundation for such a claim. But if such were the yardstick to control the issue here, the owner of the truck, or any mechanic employed to remove and repair the truck, if injured in so doing, would be entitled to workmen's compensation from the defendant Ragnar-Benson, Inc., on the ground that the work of getting the truck back on the job was beneficial to it.

A somewhat similar situation has been before this court under circumstances more favorable to the employee than in the instant case. The factual situation in the case of *Jarman* v. *Trucking, Inc.*, 286 Mich. 492, resembles the case at bar. Jarman was employed by the defendant to use his own truck hauling freight for the defendant and was injured while repairing his truck *after being instructed to have his truck ready for a Monday morning load.* He was not subject to any directions by his employer until he returned to work. The court said (p. 494):

"We think plaintiff's injury did not arise out of and in the course of his employment by defendant Trucking, Inc. He had his own truck, hauling freight to Detroit for a fixed price per trip up to a certain load, and, after 18,000 pounds, got extra pay for hauling extra weight. He was to furnish and operate his own truck and gasoline and it was his duty to maintain and keep the truck in running condition."

The accident resulting in Mr. Rector's death occurred while he was working for himself. The work-

men's compensation law* is not designed as a complete substitute for life insurance, or sick and accident insurance, for employees, nor can sympathy be allowed to broaden the express statutory provisions of the workmen's compensation law. It provides that the injury must arise out of and in the course of the employment. We are compelled to reach the conclusion that as a matter of law the accidental death of Louis Rector did not arise out of and in the course of his employment.

The award is vacated, with costs.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.