## MACK v. REO MOTORS, INC.

1. WORKMEN'S COMPENSATION—PROXIMATE CAUSE—PERSONAL MISSION OF EMPLOYEE—INJURY ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT.

   An employee who suffers an accidental injury while engaged solely on a personal mission of his own and who is not performing any service or duty for his employer suffers an injury that did not arise out of or in the course of his employment and, consequently, is not entitled to workmen's compensation therefor (CL 1948, § 412.1).

2. SAME—PROXIMATE CAUSE.

   An injury "arises out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury (CL 1948, § 412.1).

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  58 Am Jur, Workmen's Compensation §§ 235, 240.
[2]  58 Am Jur, Workmen's Compensation § 211.
[3]  58 Am Jur, Workmen's Compensation §§ 209–212.
[4]  58 Am Jur, Workmen's Compensation § 2.
[5]  58 Am Jur, Workmen's Compensation § 209.
[6]  14 Am Jur, Courts § 203.
[7]  58 Am Jur, Workmen's Compensation § 224.
[8]  14 Am Jur, Courts §§ 85, 86.
[9]  14 Am Jur, Courts § 116.
[10] 58 Am Jur, Workmen's Compensation § 228.

3. SAME—INJURY ARISING OUT OF AND IN COURSE OF EMPLOYMENT.

Whether an injury can be said to have arisen out of and in the course of the employment depends upon the particular facts and circumstances of each case (CL 1948, § 412.1).

4. SAME—PURPOSE OF WORKMEN'S COMPENSATION ACT.

The workmen's compensation act is not designed as a complete substitute for life, or sick and accident, insurance and sympathy is not allowed to broaden its express provisions (CL 1948, § 411.1 *et seq.*).

5. SAME—INJURY MUST ARISE OUT OF AND IN COURSE OF EMPLOYMENT—PROXIMATE CAUSE.

An injury, to be compensable under the workmen's compensation act, must both arise out of and in the course of the employment and there must have been a causal connection between the employment and the injury (CL 1948, § 412.1).

6. COURTS—STATUTES.

The Court should not attempt to rewrite the statute law.

7. SAME—INJURY DURING INTERMISSION.

The controlling question in a case arising from an injury received by an employee during an intermission from work is not whether the employee is still the "servant," and the employer the "master" during such period (CL 1948, § 412.1).

8. SAME—CONSTRUCTION OF STATUTES—WORKMEN'S COMPENSATION.

Decisions from other States have no particular force here in construing workmen's compensation law of this State without a showing that the statute law there is the same as in this State.

9. SAME—FEDERAL COURTS—CONSTRUCTION OF STATE STATUTES.

Decisions of Federal courts do not control decisions of a State court of last resort, on questions of construction of a State statute, in the absence of any Federal question being involved.

10. WORKMEN'S COMPENSATION—INJURY ARISING OUT OF AND IN COURSE OF EMPLOYMENT—NOON INTERMISSION.

Employee who suffered accidental injury to back when she fell on the ice on employer's premises during 30-minute lunch period while en route to cafeteria, also located on the employer's premises, the employee being free to stay on the employer's premises or go elsewhere for lunch, *held,* not entitled to workmen's compensation therefor, since the injury did not arise out of and in the course of her employment (CL 1948, § 412.1).

SMITH, KELLY, and BLACK, JJ., dissenting.

Appeal from Workmen's Compensation Commission. Submitted January 5, 1956. (Docket No. 35, Calendar No. 46,571.) Decided April 2, 1956.

Gilda Mack presented her claim for compensation against Reo Motors, Inc., employer, and Aetna Casualty & Surety Company, insurer, following injury sustained in fall near cafeteria during noon lunch period. Award to plaintiff. Defendants appeal. Reversed.

*Warner & Hart,* for plaintiff.

*Lacey, Jones & Doelle,* for defendants.

BLACK, J. (*dissenting*). Due proceedings under the workmen's compensation act resulted in an award for plaintiff and application by defendants for review by certiorari. The application having been granted—quite improvidently in my view—we are confronted with question whether the compensation commission exceeded its authority by holding that the plaintiff employee's accidental injury, sustained by her on the defendant employer's premises during noon intermission, is compensable. The facts are typical of employee intermission cases, as will presently appear.

January 1, 1956, the writer became an associate member of this Court. The present case was assigned to him 4 days later. Seven days prior to such assignment a majority of the Court held (*Salmon* v. *Bagley Laundry Co.,* 344 Mich 471) that an employee's accidental injury, sustained on the employer's premises during so-called coffee break, is not compensable. The Court said (p 474), "The right to control or direct an employee is an essential element in determining whether the relationship of employer and employee exists" and then proceeded with logis-

tic or paralogistic—depending on point of view—reasoning as follows (p 475):

"In the instant case plaintiff had the option of leaving the laundry for coffee or remaining within the building for a rest period. During this period her employer had no control over her actions, nor can it be said that she was actively engaged in rendering a service to her employer. The fact that she was paid during this 10-minute interval has no bearing upon whether her injury arose out of and during the course of her employment. During this period plaintiff was exercising a privilege common to all employees of the defendant company. The facts in this case do not warrant a finding that her injury arose out of and during the course of her employment."

Note the new word "actively." I didn't know, until now, that an employee must "actively" be engaged in rendering a service to the employer at time of accidental injury to render the injury compensable, Michigan's direct word for 38 consecutive years having been to pinpoint contrary. Witness the following declaration of sensible simplicity (*Haller* v. *City of Lansing,* 195 Mich 753, 758 [LRA1917E, 324]):

"As directly applied to the noon intermission, it is a long and well-settled rule that the service tie, or contractual relations and obligations between master and servant, is not broken by such suspension of all activities directly beneficial to the employer."

Mr. Justice SMITH dissented in the *Salmon Case.* His dissent, in my view, is quite unanswerable. It was not in fact answered at all, as the respective opinions disclose on face thereof. My pen is therefore arrayed with that of Justice SMITH by adoption of his mentioned dissent. It will proceed, on combined strength of his reasoning in *Salmon* and proven soundness of *Haller,* to record for this companion

case convictions that are due, quite manifestly, for minority support only. To make it perfectly plain, I "actively" refuse to swallow *Salmon's* new compound of transparent ipsedixitism.

In the way of prologue, reference is made to the broad-gauge declarations appearing in *Cudahy Packing Company of Nebraska* v. *Parramore* (1923), 263 US 418 (44 S Ct 153, 68 L ed 366). The court was dealing with contention that the accident in question occurred off the premises of the employer, a few minutes before the time actual service of the employee was due to begin, and that the constitutionally-necessary relation between employment and accident was therefore absent. The particular passages I have in mind fully support Justice Smith's mentioned dissent and they are quoted as follows:

"The modern development and growth of industry, with the consequent changes in the relations of employer and employee, have been so profound in character and degree as to take away, in large measure, the applicability of the doctrines upon which rest the common-law liability of the master for personal injuries to a servant, leaving of necessity a field of debatable ground where a good deal must be conceded in favor of forms of legislation, calculated to establish new bases of liability more in harmony with these changed conditions. Workmen's compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. * * *

"We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was, therefore, to that extent, outside the specified hours of employ-

ment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose."

Since this case of Mack was submitted, the United States supreme court, speaking unanimously through Chief Justice Warren, has affirmed again the principle of *Parramore* by holding that before-and-after-workshift activities of an employee that are so closely related to his direct duty as to form an integral part thereof are compensable under the fair labor standards act (*Steiner* v. *Mitchell,* 350 US 247 [76 S Ct 330, 100 L ed 267]; and *Mitchell* v. *King Packing Co.,* 350 US 260 [76 S Ct 337, 100 L ed 282]). I think eating, and going to and from eating during noon intermission, at least when it occurs without break of nexus on or immediately adjacent to the employer's premises, is correspondingly integral.

Turning now from preliminary observations to the case before us: The facts on which this duplicate-of-*Salmon Case* arrived here were comprehensively stated by the commission below (now appeal board) as follows:

"Plaintiff was working as a multigraph machine operator on December 2, 1952 in department 85-A located on the second floor of a building facing on Washington avenue in Lansing, Michigan. Plaintiff worked from 7:30 a.m. to 4 p.m. with a 30-minute lunch period beginning at 11:12 a.m. Employees were required to punch timecards on coming to work in the morning and on leaving for the day. They were not required to punch the time clock at lunch time. During the lunch period employees could go wherever they wished. They could eat in the departments where they worked, leave the employer's premises and go to restaurants on Washington avenue, go home for lunch, or eat in the cafeteria on defendant's premises. This cafeteria was located in a sep-

arate building of defendant which also faced on Washington avenue. A paved driveway ran between the 2 buildings and the door by which plaintiff left department 85-A was approximately 300 feet from the cafeteria door. This driveway was used by employees to walk to the cafeteria and was the only way to go. It was the same route that employees traveled in coming to and leaving work. The route from department 85-A to the cafeteria was on defendant's premises.

"The cafeteria building and the tables and chairs were owned by defendant. The equipment used to prepare food was owned by a Mr. Myers who operated the cafeteria under the supervision of defendant. Myers received the profits.

"The cafeteria was established as a convenience for defendant's employees. Defendant was interested in having a place on the premises where employees could eat.     *     *     *

"On December 2, 1952, the whistle blew for lunch at 11:12 a.m. Plaintiff walked downstairs, left the building where she worked, and started along the paved driveway toward the cafeteria. Near the entrance to the cafeteria building, plaintiff slipped on ice and both feet went out from under her. Plaintiff fell on her buttocks and back, striking her head on the pavement. She was taken to defendant's first-aid department for treatment and then was taken to her home. Plaintiff was attended by Dr. DeVries and returned to work within 2 or 3 days. Diathermy treatments were furnished by defendant for 2 or 3 weeks. However, plaintiff suffered from back pain from December 2, 1952 to June 21, 1954, the date of hearing herein."

*First:* Defendants rely on *Daniel* v. *Murray Corporation of America,* 326 Mich 1—employee fall in parking lot provided by the employer; *Gonter* v. *L. A. Young Spring & Wire Corporation,* 327 Mich 586 —another similar parking lot case; *Luteran* v. *Ford Motor Co.,* 313 Mich 487—lunch-period injury—em-

ployee watching ball game on employer's premises; *Lewis* v. *Workmen's Compensation Commission,* 335 Mich 191—State employee—working in State office building—injured at revolving door while on her way out to lunch; *Saily* v. *500 Bushel Club,* 332 Mich 286 —employee injured by attack of deer following lunch period while she was walking in woods near place of employment, and *Clark* v. *Chrysler Corporation,* 276 Mich 24—off-duty employee injured while exercising in the company gymnasium provided for employees. Their argument, presented on strength of foregoing authority, is summarized this way:

"The deciding factor in these cases is whether the employee at the time of the injury was rendering a service to the employer, or was engaged in one of the duties of the employment.   *   *   *
"She had left the building in which she was employed, after her lunch period had commenced and had no further duty to perform for her employer until the end of the lunch period.   The injury occurred while she was proceeding to the cafeteria to eat lunch, exercising her own free choice."

The commission did not accept defendants' quoted view and proceeded to follow *Haller* v. *Lansing, supra; Amicucci* v. *Ford Motor Co.,* 308 Mich 151; and *Dershowitz* v. *Ford Motor Co.,* 327 Mich 386.  Plaintiff relies on this same group of cases—hence, the stated issue.

To say that the confusion and conflict of decisions so arrayed can be reconciled and composed for this noon-intermission case is a bit short of accuracy if not actual dissemblance.  For direct instance: *Haller's Case* says one thing and *Luteran's Case,* pretending no offense to *Haller,* says another.  *Haller's* widow received compensation on strength of a tersely stated rule (p 759)—"A workman is considered in the employment of his master during the intermis-

sion for the noon hour if he remains upon the premises"—whereas Luteran received none on account of poorly-varnished evasion, 29 years later, of the same rule. The profession is surely entitled to ask, "What gives here?" and I speak no canted words. Something has to give here and it will on the morrow if not this day. The hour is late for the confession and absolution of a new start, and I suggest that we now have done with further effort toward longitudinal quartering of woolly-worded legal hairs such as are found in the likes of *Luteran*.

This is an appellate court—not a super administrative tribunal. The constitutional writ of certiorari, when issued to the commission below, brings us questions of law only. Its issuance is—or should be—confined to cases where the commission has decided an important question of law, not a mixed question of fact and law, in a way apparently contrary to the broadly stated and oft-heralded intent of the act. It is not our job, the writ having been issued, to weigh the evidence or try issues *de novo,* and we are not graced by the sorry farrago of doubt made evident in compensation cases of recent years. Why not, in these circumstances, formally affirm for the future that where decisions of the appeal board necessarily involve conflicting evidence as to essential facts, or the deduction of permissible but diverse inferences from disputed or undisputed evidence it has received, the board's resolution thereof will be presumed to be correct and that the burden of proof will be on the party attacking such resolution to show that it is erroneous?

I pause, before formal motion, for matching of *Haller* against *Luteran.* Fairly tested in the same ring, one or the other must go to the mat of discard. Luteran, like Haller, was doing the "reasonable and natural thing under existing conditions." He was watching a ball game on company premises, aft-

er he had eaten and during the noon intermission. The ball games were permitted by the employer. He was in no way responsible for, neither was he required to expect, an unintentionally thrown ball bat any more than Haller was required to expect the explosion that took his life. This Court said, at first (p 489), that Luteran "was standing somewhat near" the batter. Later, and quite bodaciously I think, the Court assumed to say (twice on the same page, as a matter of law) that Luteran was standing (p 491) "in dangerous proximity to another employee who was swinging a baseball bat." Here are more facts disclosed in the printed record: Luteran was not even close to the ambit of the batter's swing. The exact distance is not shown in the record. He was, nevertheless, far enough away from the batter for occurrence of this chain of events: The batter had just produced a new ball, purchased by himself, for the game. He testified "I wanted to kill it," and apparently made mighty effort to do so. When he lost grip on the bat, he glanced to follow its flight and, seeing Luteran in the path thereof and looking away, called Luteran by nickname with result that Luteran turned just in time to get the bat in the face. Anyone who says as a matter of law that such is "dangerous proximity" has never played baseball— neither has he tested velocity against reaction time to get an idea of distance—and I timidly suggest that he should leave determinations of such nature to constituted triers of fact.

Such is the essence of *Luteran's Case*, and such is the way he was judged guilty of having broken the "nexus" between himself and his employment. The same gall to lesser extent sours *Clark, Lewis* and *Saily*—also *Tegels* v. *Kaiser-Frazer Corporation*, 329 Mich 84. Eventually we must face up to the error of each, so why not now? *Tarde, quae credita laedunt, credimus.*

*Second:* Foregoing convictions having been laid on the table for due scrutiny, I now move on this first conference day of the year (March 1, 1956)* that so-called intermission cases, and this is one equally with *Salmon,* be guided again by the precepts of *Haller* v. *City of Lansing, supra.* Such precepts, and I do not wish to be understood as limiting their scope to the employer's premises if "nexus between workman and employer" remains unbroken, are introduced on page 758 of the *Haller Case* in language I have previously quoted, and they continue to end thereof.

*Haller,* exhaustive and helpful, was and is a leading case in this country. It was annotated at the time (LRA1917E, 324), and this of all courts should have good reason for decision to ignore it. The case supports decision in *Zurich General Accident & Liability Ins. Company* v. *Brunson* (CCA 9, 1926) 15 F2d 906; its nexus rule is quoted as lead discussion of subtopic entitled "Interruption of employment" in the 55-page annotation headed "What is accident arising out of and in course of employment within meaning of workmen's compensation act" (Ann Cas 1918B, 768, 815); it braces the annotated case and annotations shown in 6 ALR 1145, 1151—"Compensation for injuries during lunch hour on employer's premises," and is cited as *the* authority of the United States under the text appearing in 58 Am Jur, Workmen's Compensation, § 288, p 735, *viz.,*

"In a number of cases it has been held that an injured workman is entitled to compensation for injuries received on the employer's premises, although the accident occurred during lunch period when work was not actively in progress, where the eating of the lunch on the premises was with the employer's knowledge and consent, express or implied."

---

* This case was decided April 2, 1956.—Reporter.

There is no thought, outside the peninsular State, of departure from the rule of *Haller.* Dean Larson, of the University of Pittsburgh Law School, now on leave as under-secretary of labor, says in his recent work entitled "The Law of Workmen's Compensation" (vol 1, p 194):

"As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before or after working hours or at lunch time are compensable, but if the injury occurs off the premises, it is not compensable, subject to several exceptions. Underlying some of these exceptions is the principle that course of employment should extend to any injury which occurred at a point where the employee was within range of dangers associated with the employment."

Getting directly to our present "on the premises" point, Larson then declares (p 298) the universal law of the United States and England in these words:

"Injuries occurring *on the premises* during a regular lunch hour arise in the course of employment, even though the interval is technically outside the regular hours of employment in the sense that the worker receives no pay for that time and is in no degree under the control of the employer, being free to go where he pleases." (Emphasis by author.)

*Haller,* of course, is cited in support as the law of Michigan.

*Haller* announced no rule which at the time was unknown in our State. As far back as Justice COOLEY's time (*Broderick* v. *Detroit Union Railroad Station & Depot Company,* 56 Mich 261 [56 Am Rep 382]), the doctrine of continuity of employment relationship during noon intermission was recognized and affirmed. Later, and in *Boner* v. *Eastern Michigan Power Company,* 210 Mich 142, this Court adopt-

ed the same Baldwin and Thompson rules* as are
quoted in *Häller* (p 759) and proceeded to hold
(p 145) "that the relation of master and servant is
not suspended where the servant remains upon the
premises during the noon hour by the express or
implied permission of the master." True, 4 justices
dissented in *Boner*. Their dissent, however, was
addressed to other points and the quoted rule was
left unaffected.

*Haller's* worth is seen in the proven foresight of
its author. He had no way of knowing, in 1917,
that the dinner pail noon hour would progressively
be displaced by the cafeteria style of this day—
neither did he have inkling of the coffee break or
corresponding encouragement by employers of rec-
reational exercise and wholesome rest in the form
of diversion, on the premises, during work intermis-
sions. Yet he wrote in terms so broad and flexible
as to impel respectful suggestion of gifted prescience
on his part.

This newcomer is admittedly curious as he views
majority refusal in *Salmon* to follow the great
weight of authority in intermission cases. Most
courts and writers, including our own predecessors,
favor compensatory award in such instance, there
being no break of nexus as a matter of fact in the
given case. Yet with start in *Luteran* and finish with
*Salmon* we turn absent fair explanation to the nar-
rower view—a view that would turn the compensa-
tion act off and on like a spigot when, for instance,
telephone call by wife or call by nature temporarily
takes an employee from bench or shovel. Some, in-
cluding the writer, wonder and wonder again why
our Court has gratuitously veered to the frigid in
compensation cases—whereas soothsayers, pointing
to Michigan's origin of the Pleistocene age, may have

---

* See Baldwin, Personal Injuries [2d ed], § 374; 8 Thompson, Neg-
ligence, § 3752.—Reporter.

ominous answer for the discreetly bruited question as to what manner of men are these, whose interpretive habit is glacial squeeze. We must hope that Cardozo has the answer and the mystical have not. He says (The Growth Of The Law, p 66):

"Judges march at times to pitiless conclusions under the prod of a remorseless logic which is supposed to leave them no alternative. They deplore the sacrificial rite. They perform it, nonetheless, with averted gaze, convinced as they plunge the knife that they obey the bidding of their office. The victim is offered up to the gods of jurisprudence on the altar of regularity."

(This particular victim, Gilda Mack, will doubtless be offered up to the gods of jurisprudence on another altar—that of error shown in the *Salmon Case*.)

It will do no harm to soberly consider the strange silhouette we have made vis-a-vis the compensation act. Should we not heed, for instance, Dean Pound's recent criticism? Writing in 15 NACCA Law Journal, 53, 54, below careful review of *Nichols* v. *Central Crate & Box Co.*, 340 Mich 232, he said this under heading "Comment":

"Michigan has attained a bad eminence in narrow interpretation and application of the workmen's compensation act."

When Roscoe Pound says that Michigan has attained a bad eminence in given juristic field this Court is due for searching look in the mirror of its questioned decisions. The American Bar Association did not overstate his eminence when it said, in lead paragraph of eulogistic editorial comment (32 ABA Journal, 133):

"In token of the admiration, affection and deep respect in which Roscoe Pound is held by the law-

yers, jurists and leaders of thought in virtually all lands on all continents, our cover portrait this month is that of the beloved Dean Emeritus of the Harvard Law School—preeminent legal scholar of the world today and sagacious adviser of many who seek to find and follow the sound and statesmanlike course in government."

Our intermission cases will, sooner or later, receive due re-examination—here in these chambers. We should not leave to the legislature the task of attending and correcting judicial errors, as even now it has relevantly attempted to do by amendatory PA 1954, No 175 (CLS 1954, § 412.1 [Stat Ann 1955 Cum Supp § 17.151] ). The job is ours, and for support I need but turn to another field and refer to the years of tragic and now admitted injustice one may count between dissent in *Lachow* v. *Kimmich,* 263 Mich 1 (90 ALR 626, 32 NCCA 579) and final sight of light in *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697). Industry and labor have hardly scratched the surface in effort to promote greater and greater production through employer-provided or employer-encouraged ministrations toward employee comfort. Parking lots, gymnasiums, ball-diamonds, basketball and tennis courts, coffee machines, even libraries, appear through joint effort of employers and employees, all designed for indirect promotion of the purpose of employment—production, wages and profit. The company-owned or company-encouraged cafeteria, on or near the premises of labor, grows in use so swiftly as to leave us behind if we fail of comprehension. In a word, "Courts are not supposed to be blinded bats" (from Justice BUSHNELL's opinion in *Todd* v. *Hull,* 288 Mich 521, 543) and they must step to the music of the times or fall by the wayside of miserable disservice.

There are words of wisdom in a recent Arizona case (*Nicholson* v. *Industrial Commission,* 76 Ariz

105, 109 [259 P2d 547, 549]). The court held that (p 110) "Lunching on the premises is generally recognized to be within the course of employment when the same is customary and convenient for the employee," and said this of relevant appellate duty:

"A liberal construction is not synonymous with a generous interpretation. To interpret liberally envisions an approach with an open and broad mind not circumscribed by strictures or predilection, whereas a generous interpretation suggests free-handedness—largess. *It is not in the power of this court to 'give' but it definitely is its duty to interpret the law to insure that what the law gives is not withheld.*" (Emphasis mine.)

*Third:* Holding, as I do, that the commission was possessed of authority to determine that on December 2, 1952, plaintiff received a personal injury which arose out of and in course of employment, we are confronted with contention that plaintiff's claim filed January 7, 1954, came too late. The commission found, and its finding in such regard is fully supported as a matter of fact:

"We further find as follows: The accidental injury of December 2, 1952 initiated plaintiff's back trouble. However, the duties which she performed after returning to work following such injury aggravated her condition and caused it to be progressive. Such work, including and culminating in the incidents of October 5, 1953 relative to the pushing of the heavy box to the elevator and squatting to pick up the cleaning cloth, completed the process and resulted in the condition diagnosed by Dr. Gardner which totally disabled plaintiff and required her to quit work on October 5, 1953. The regular and customary work necessitated the lifting, pushing and handling of heavy articles and required plaintiff regularly to bend over and twist and turn her body. This was regular and customary work involving very

strenuous and unusual physical exertion. Plaintiff's work presented a substantial hazard of back injury far in excess of that attending employment in general. The date of disability is October 5, 1953 when plaintiff ceased work."

The facts present an essentially new issue. That issue should be met without consideration of the defendant employer's knowledge and alleged failure to file report pursuant to part 3, § 17 of the act (CL 1948, § 413.17 [Stat Ann 1950 Rev § 17.191]). As we have seen, the plaintiff sustained personal injury which arose out of and in course of employment. Had such injury been disabling at the time it then and there would have become compensable. She continued at work, presenting substantial hazard of aggravation of that initial injury due to causes and conditions characteristic of and peculiar to such work, with resultant disabling effect of the original injury. Her right to compensation accordingly stems from the combination of noncompensable accidental injury and final aggravation thereof to the point of disability, and it accrued on the date of disability as found by the commission.

Where an accidental injury is sustained which is noncompensable for want of disability at the time, and where that injury is later occupationally-aggravated to the point of disability, the aggravation becomes a compensable injury and the period of time allotted by the statute for making claim commences to run when the right to such compensation accrues. Plaintiff's claim for compensation was timely, and defendants' presently-considered contention should therefore be overruled.

The award should be affirmed.

SMITH and KELLY, JJ., concurred with BLACK, J.

BOYLES, J.   For the reasons stated herein, I do not concur in affirming the award.

The facts and circumstances in "intermission cases" (to use the designation employed by Justice BLACK) vary; and the mere fact that it is an "intermission" case is not the yardstick which controls decision.   In the instant case the facts and circumstances have been sufficiently stated in the opinion by the commission, quoted by Justice BLACK.

The *Haller Case,** decided in 1917, on which Justice BLACK relies, holds (syllabi):

"1. It is only wilful and intentional negligence of an employee that precludes recovery of compensation under the workmen's compensation act.

"2. The service tie or contractual relation and obligation between master and servant is not broken by suspension of all activities directly beneficial to the employer, as by noon intermission for lunch.

"3. In proceedings for compensation for the death of an employee under the workmen's compensation act, where the death was due to injuries sustained as the result of an explosion of gas caused by deceased lighting his pipe, upon going into the employer's tool house adjacent to his work for better shelter from windy and inclement weather, while eating his lunch at the noon hour, and he was not prohibited by his employer from going into the tool house at such time, *held,* that such employee was within the act, and that compensation for his death was properly allowed."

The first 2 of the above conclusions seem to have been abandoned, as not controlling of decision, in subsequent cases to decide whether an employee is entitled to workmen's compensation for an injury, under the statutory workmen's compensation law. The above third conclusion, as to the *circumstances under which* an employee may be entitled to compen-

---

* *Haller* v. *City of Lansing,* 195 Mich 753 (LRA1917E, 324).

sation, is still with us, plainly shown by the many decisions of this Court since the *Haller Case* was decided in 1917. In those cases this Court has often been called upon to decide whether the employee's injury arose out of and in the course of his employment;[*] and as to whether there was a causal connection between his employment and the injury. If not, and if, at the time of his injury, the employee was engaged solely on a personal mission of his own, not then performing any service or duty for his employer, our decisions hold that the injury did not arise out of or in the course of the employment, and that consequently the employee was not entitled to compensation, under the act.

In the *Haller Case*, relied on by Justice BLACK as controlling of the instant case, Haller, an employee of the city of Lansing, was a laborer engaged in leveling up a place in a city park. When the noon hour for eating lunch arrived, Haller quit working, took his dinner pail into a toolhouse to eat, and struck a match to light his pipe causing a gasoline explosion resulting in his injury. The Court, basing its conclusion on the ground that the contractual relation between master and servant continued unbroken during the noon-hour intermission, said (pp 759, 763):

"'A workman is considered in the employment of his master during the intermission for the noon hour, if he remains upon the premises.' Baldwin on Personal Injuries (2d ed), § 374. *   *   *

"Agreeably to that rule, it is generally held under workmen's compensation laws that, while such relation so continues, an injury to an employee may arise out and in the course of his employment, although he is not directly engaged in the work of his employment at the time. *   *   *

"The building was unlocked and free of access, with no warning signs, was on his employer's prem-

---

[*] See CL 1948, § 412.1 (Stat Ann 1950 Rev § 17.151).—REPORTER.

ises invitingly close to where he was working in the inclement weather. As before stated, in seeking shelter there during the noon intermission, he did a reasonable and natural thing under existing conditions, might reasonably light his pipe at such a time, was doing no forbidden thing, incurring no apparent risk, and violating no known rule of his employment."

The *Haller Case,* decided in 1917, on the basis of the master-servant relationship being continuous during an "intermission" from work, does not apply, where we are called upon to decide, under the workmen's compensation statute law, which we must follow, whether the injury arose both out of and in the course of the employment, and whether there was a causal connection between the employment and the injury.

*Luteran* v. *Ford Motor Co.,* 313 Mich 487, decided in 1946, written by the late Justice North and concurred in unanimously by the Court, has been made the target of ridicule by Justice Black. I do agree with the Justice, however, when he concedes that it may overrule the *Haller Case.* In the *Luteran Case* the Court held that an employee was not entitled to workmen's compensation who was injured by being hit by a baseball bat during the half-hour noonday lunch-hour "intermission" while he was watching other employees playing baseball on his employer's premises. He was merely a spectator and during that "intermission" was not engaged in performing any service whatever for his employer. The syllabi correctly state the holding of the Court:

"An injury 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury (CL 1929, § 8417, as amended by PA 1943, No 245).

"Whether an injury can be said to have arisen out of and in the course of the employment depends upon the particular facts and circumstances of each case.

"The workmen's compensation act is not designed as a complete substitute for life, or sick and accident, insurance and sympathy is not allowed to broaden its express provisions (CL 1929, § 8407, as amended)."

I agree with Justice Black where he writes "matching of *Haller* against *Luteran.* Fairly tested in the same ring, one or the other must go to the mat of discard." In view of the many decisions of this Court since the *Haller Case* was decided in 1917, it is apparent that the *Haller Case* has been effectively overruled by the subsequent *Luteran Case* and many others, and that the *Haller Case* has gone "to the mat of discard."

But the *Luteran Case, supra,* does not stand alone in overruling the *Haller Case,* and in deciding the basis on which this Court construes and follows the statute law. There are many others: *Malone* v. *Detroit United Railway,* 202 Mich 136; *Boner* v. *Eastern Michigan Power Co.,* 210 Mich 142; *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich 462; *Geibig* v. *Ann Arbor Asphalt Construction Co.,* 238 Mich 560; *Beck* v. *Commercial Driveway, Inc.,* 260 Mich 550; *Amicucci* v. *Ford Motor Co.,* 308 Mich 151; *Dershowitz* v. *Ford Motor Co.,* 327 Mich 386; *Gonter* v. *L. A. Young Spring & Wire Corporation,* 327 Mich 586; *Pilgrim* v. *Menthen,* 327 Mich 714; *Underwood* v. *National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co.,* 329 Mich 273; *Brandner* v. *Myers Funeral Home,* 330 Mich 392; *Weaver* v. *General Motors Corporation,* 330 Mich 404; *Fields* v. *G. M. Brass & Aluminum Foundry Co.,* 332 Mich 113; *Arnold* v. *Ogle Construction Co.,* 333 Mich 652.

We should add to that list those other decisions where the alleged injury to the employee occurred

during what may also be termed an "intermission," namely, when the employee was not actively or actually engaged in doing work or performing any service for his employer, but was on a mission solely his own, personal to himself, during which time he was not performing any service for his employer. Such cases, decided under various circumstances, are: *Hills* v. *Blair,* 182 Mich 20 (7 NCCA 409); *Buvia* v. *Oscar Daniels Co.,* 203 Mich 73 (7 ALR 1301); *Lipinski* v. *Sutton Sales Co.,* 220 Mich 647; *Clark* v. *Chrysler Corporation,* 276 Mich 24; *Furino* v. *City of Lansing,* 293 Mich 211; *Meehan* v. *Marion Manor Apartments,* 305 Mich 262; *Rector* v. *Ragnar-Benson, Inc.,* 313 Mich 277; *Luteran* v. *Ford Motor Co., supra; Haggar* v. *Tanis,* 320 Mich 295; *Daniel* v. *Murray Corporation of America,* 326 Mich 1.

To the above list there should also be added the more recent cases decided under circumstances quite analogous to those in the case at bar, where this Court has continued to adhere to the conditions theretofore announced, as to what must be shown in order that the employee may be entitled to compensation under the act. They are: *Hickman* v. *City of Detroit,* 326 Mich 547; *Roblyer* v. *City of Kalamazoo,* 327 Mich 392; *Tegels* v. *Kaiser-Frazer Corporation,* 329 Mich 84; *Kelly* v. *Dixie Fuel & Supply Co.,* 329 Mich 466; *Stornant* v. *Licari-Packard Grosse Pointe, Inc.,* 332 Mich 210; *Saily* v. *500 Bushel Club,* 332 Mich 286; *Lewis* v. *Workmen's Compensation Commission,* 335 Mich 191; *Campbell* v. *Secretary of State,* 335 Mich 237; *White* v. *Public Service Commission,* 338 Mich 282.

An examination of the above decisions readily discloses the uniform rules which have been followed. To discuss them separately would only needlessly lengthen and encumber an opinion.

Also to the above cases should be added the most recent case, likewise made a target for ridicule by

Justice Black. In *Salmon* v. *Bagley Laundry Co.*, 344 Mich 471, decided December 28, 1955, an employee was injured while returning to her place of employment from a restaurant to which she had gone for her own purposes, during which "intermission" she was not engaged in rendering any service for her employer. Conforming to the many decisions of this Court, in holding that the injury did not arise out of and during the course of her employment, the Court said (p 475):

"In the case at bar, as in the *Tegels Case, supra,*\* the right to control the actions or activities of the employees during the noon-hour lunch period or coffee-break period was absent. In the instant case plaintiff had the option of leaving the laundry for coffee or remaining within the building for a rest period. During this period her employer had no control over her actions, nor can it be said that she was actively engaged in rendering a service to her employer. The fact that she was paid during this 10-minute interval has no bearing upon whether her injury arose out of and during the course of her employment. During this period plaintiff was exercising a privilege common to all employees of the defendant company. The facts in this case do not warrant a finding that her injury arose out of and during the course of her employment."

When we are called upon to decide whether the injury arose both out of and in the course of the employment, and whether there is a causal connection between the employment and the injury, we should continue to follow the statute law. It declares that an injury, to be compensable, must arise out of and in the course of the employment. Both of these requirements must be complied with; and furthermore, in order to be compensable, there must have been a causal connection between the employment and the

---

\* 329 Mich 84.

injury. The Court should not attempt to rewrite the statute law. Unless or until the legislature changes the workmen's compensation law I am not willing to overrule the decisions hereinbefore referred to. The controlling question under the Michigan workmen's compensation law is not whether the employee is still the "servant," and his employer the "master," during an intermission from work.

Decisions from other States relied upon by Justice BLACK, without showing that the statute law there is the same as in this State, have no particular force here, in construing the statutory workmen's compensation law of this State.* Nor do the decisions of Federal courts, also relied upon, control decision of a State court of last resort, on questions of construction of a State statute, in the absence of any Federal question being involved.

"The Michigan Supreme Court is authorized to interpret the Michigan workmen's compensation law, and the holding of that Court binds Federal district court and litigants before the Federal court. CL 1948, § 413.15 (Stat Ann 1950 Rev § 17.189)." *Milan v. Kausch* (CCA 6), 194 F2d 263 (syllabus).

The award in this case is set aside.

DETHMERS, C. J., and SHARPE, REID, and CARR, JJ., concurred with BOYLES, J.

---

* See *Daniel* v. *Murray Corporation of America, supra,* 7–9.